WILMER MECHLIN *v.* COMPTROLLER OF THE
TREASURY, RETAIL SALES TAX DIVISION

[No. 860, September Term, 1980.]

*Decided March 10, 1981.*

The cause was argued before GILBERT, C. J., and THOMPSON
and WEANT, JJ.

*William H. Clarke,* with whom were *Galiher, Clarke, Martell & Donnelly* on the brief, for appellant.

*Paul S. Sugar, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

> As to the astuteness of taxpayers in ordering their affairs so as to minimize taxes, we have said that "the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it." *Superior Oil Co. v. Mississippi,* 280 U.S. 390, 395-396. This is so because "nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions." [Quoting *Commissioner v. Newman,* 159 F.2d 848, 851 (2d Cir. 1947) (Hand, C. J.; dissenting)].

*Atlantic Coast Line R.R. Co. v. Phillips,* 332 U.S. 168, 172-73, 67 S. Ct. 1584, 1587, 91 L. Ed. 1977, 1981 (1947) (Frankfurter, J.). In the instant appeal from the Circuit Court for Montgomery County (Mitchell, J.), we are asked to determine whether in attempting to walk as near to the line of the law as possible, the taxpayer has passed it.

As noted by Thomas J. Mace, Hearing Officer for the Office of the Comptroller of the Treasury of the State of Maryland, the relevant facts in the proceeding before him, and now before us on appeal, are neither complicated nor a matter of dispute. In 1970, the appellant Wilmer Mechlin, a resident of Montgomery County, Maryland, and an attorney admitted to practice law in the District of Columbia, purchased the Ayesha, a 1970 Columbia 43 sailboat from a Florida boat dealer. Mr. Mechlin took delivery of this sailboat in Norfolk, Virginia on 6 June 1970. Two days later the Ayesha first entered Maryland waters, where she remained for the most part until she was sold in May of 1973.

Having been advised by a Maryland boat dealer that a vessel so documented was not subject to Maryland sales tax due to a quirk in the Maryland tax law, Mr. Mechlin had his sailboat federally documented in the District of Columbia office of the United States Coast Guard. Hence no tax based upon the purchase or use of the Ayesha was or has been paid to the State of Maryland or to any other federal or state jurisdiction.

Having received, and responded to, several missives from the appellee the Comptroller of the Treasury, Retail Sales Tax Division concerning the payment of tax as a consequence of having purchased the Ayesha, Mr. Mechlin ultimately was notified by letter dated 19 April 1974 that in accordance with sections 344-45 of article 81 of the Maryland Annotated Code,[1] the following assessment had been recorded against his account:

| | |
|---|---|
| Sales and/or Use Taxes | $ 2,144.68 |
| Interest | 246.64 |
| Penalty | 214.47 |
| Total | $ 2,605.69 |

For the period: June 6, 1970 thru June 6, 1970.[2]

Despite Mr. Mechlin's leveling various challenges at the foregoing assessment, the Comptroller of the Treasury, the Maryland Tax Court, and the Circuit Court for Montgomery County have seen fit to uphold said assessment. Similarly, in concluding that Judge Mitchell did not err in affirming the decision of the Maryland Tax Court, we find that we must reject each of Mr. Mechlin's appellate arguments, namely:

    I.   [His] boat was exempt from a Maryland use tax by § 326 (g-1) of Article 81 of the Maryland Code.

---

**1.** Although §§ 344-45 have been amended several times since April of 1974, none of the legislated changes are of consequence here.

**2.** (Footnote added). The apparent discrepancy in the dates contained in this assessment notice is the basis for the contentions that are discussed at section II, III, and IV *infra.*

II. Original assessment of April 19, 1974, was null and void.

III. Correction of original assessment was barred by Statute of Limitations.

IV. Statute of Limitations was not tolled by gross negligence provision of Article 81, § 393 (a) of the Maryland Code.

I.

In claiming an exemption from the payment of the assessed tax, the appellant relies upon Maryland Annotated Code article 81 section 326 (g-1), which provides in pertinent part:

> The tax hereby levied shall not apply to the following sales:
>
> . . .
>
> (g-1) *New or used vessels.* — Sales of new or used vessels upon which the excise tax is levied and imposed by Section 4E of Article 14B of this Code is collected by the Department of Chesapeake Bay Affairs *or which are to be titled or numbered in another state.* [Emphasis added].

More specifically, he relies upon that portion of section 326 (g-1), which we have italicized and which, interestingly, was stricken by the Legislature on 23 April 1971, by chapter 107, Acts 1971. Accordingly, our task is to construe the aforementioned provision.

In *Atlantic, Gulf & Pacific Co. v. Department of Assessment & Taxation,* 252 Md. 173, 177, 249 A.2d 180, 182 (1969), Judge Barnes, writing for the Court of Appeals, stated that

> "[t]he cardinal rule of construction of a statute is to discover and to carry out the real legislative intention. . . . The legislative intent is to be sought in the first instance in the words used in the statute

and if there is no ambiguity or obscurity in the language used in the statute, there is usually no need to look elsewhere to ascertain the intent of the legislature."

(Quoting *Maryland Medical Service, Inc. v. Carver,* 238 Md. 466, 477-78, 209 A.2d 582, 588 (1965) (citations omitted)). On the other hand, where, as here, the language of the statute is not clear and unambiguous, our looking elsewhere is guided by two well-established maxims of statutory construction. These particular maxims, set out in *Atlantic, supra,* at pages 182-83, 249 A.2d at 186, are

(1) that tax exemptions are to be narrowly construed, and (2) that where legislation is susceptible of two constructions, a long continued and unvarying construction applied by the administrative officials administering the statute in question is strongly persuasive and should not be disregarded by the courts except for weighty reasons.

That the language of article 81, section 326 (g-1) is unclear and ambiguous is so for two reasons. First, it appears that when a boat is federally documented it receives a number. The appellee postulates that this numbering does not constitute numbering as intended by section 326 (g-1). While we shall conclude herein that this is true, we nevertheless are mindful that on its face section 326 (g-1)'s term "numbered" does not make clear such a distinction. Second, the phrase "in another state" is susceptible to more than one interpretation, in that there is some question whether or not the word "in" can be interpreted to mean "by" as well.

In ruling that the Ayesha was not tax exempt, the Circuit Court for Montgomery County relied upon the Maryland Tax Court's opinion in *Price v. Comptroller,* Sales Tax No. 38, June 24, 1975, 2 Md. State Tax Rep. (CCH) ¶ 200-753, for the proposition that " 'the purpose of the exemption in Section 326 (g-1) is to avoid duplication of tax' . . .." Of all the

reasons propounded,[3] we find this to be the most cogent for denying the Ayesha tax exempt status. Not only is such an interpretation of section 326 (g-1)'s exemption language a logical one, it also is one which, as the Hearing Officer for the Comptroller's office noted, is supported by the administrative practice of the Retail Sales Tax Division, *i.e.,* to tax federally documented boats. *See, e.g.,* Comptroller of the Treasury, Retail Sales Tax Division, Bulletins 64-4 and 69-5.[4]

Accordingly, the trial court's resolution on this issue was not error.

## II., III. & IV.

Mr. Mechlin's remaining three arguments hinge upon his allegation that the challenged assessment of his account is barred by limitations. In this regard we reiterate a portion of the trial court's opinion wherein this issue is addressed.

> [Mr. Mechlin's] vessel first entered Maryland waters on June 8, 1970. The State sent its first Assessment Notice on April 19, 1974. [Mr. Mechlin]

---

**3.** At each stage of the proceedings below, the decision maker asserted different grounds for its determination that Mr. Mechlin owed the assessed tax.

The Comptroller, after examining the pertinent federal and state legislation, reasoned that the federal documentation process and any local numbering system must be differentiated; that the term "state" does not normally include the federal government; and that Maryland policy, as evidenced by the testimony of Bernard F. Moan, a tax consultant for the Retail Sales Tax Division of the Comptroller of the Treasury, and by various bulletins issued by the division employing Mr. Moan, consistently has been to tax federally documented vessels.

On the other hand, the Maryland Tax Court never directly addressed the issue of the meaning of the language concerning the alleged exemption. Apparently, it accepted as self-evident the proposition that the exemption referred to in section 326 (g-1) was inapplicable here and therefore addressed only the issues pertaining to the validity and timeliness of the assessment.

In addition to grounding its decision on the opinion of the Maryland Tax Court in Price v. Comptroller, Sales Tax No. 38, June 24, 1975, the circuit court followed the well-settled principle that "[t]he circuit court ... shall affirm the Tax Court's order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." Maryland Annotated Code art. 81, § 229 (o).

**4.** The latter was revised on 1 February 1973.

communicated with the Comptroller and notified that office that the date of assessment was incorrect. On October 4, 1974, the State sent another notice dating it back to April 16, 1974.[5] [Mr. Mechlin] urgently persists that the Comptroller is barred by the four (4) year statute of limitation referred to [in Maryland Annotated Code article 81, section 393 (a)]. This claim must fail . . . .

. . . [Mr. Mechlin] had full notice of the assessment within the time limit. The fact that an amended or corrected notice was sent in October, 1974, is of little import. It would be no different than filing an amended declaration in law, after limitations would apply as long as a new claim was not asserted. This proposition was recited by the Court of Special Appeals in *Mack Trucks, Inc. v. Webber,* 29 Md. App. 256 (1975) at page 262. Judge Moore, speaking for the Court said:

> "If, however, no new cause is set out by the amendment then the doctrine of relation back applies and the question of limitations is determined with reference to the date of the original filing." (Citations omitted).

Because we can find no error in the trial court's reasoning, we adopt it as our own. Moreover, our adoption of such makes it unnecessary for us to address the issue of the appellant's alleged gross negligence in failing to pay the use tax.

For the reasons stated above, we are constrained to say that Mr. Mechlin's venture as near to the line of the law as possible has failed, he has in fact sailed across it. Hence, the judgment of the Circuit Court for Montgomery County is affirmed.

*Judgment affirmed.*
*Costs to be paid by the appellant.*

---

**5.** (Footnote added). That this corrected assessment notice was erroneously backdated is not of consequence. What is significant is that the notice properly stated the period of assessment as being from 1 June 1970 through 30 June 1970.