508 A.2d 538

**Winton B. OSBORNE**

v.

**COMPTROLLER OF the TREASURY.**

**No. 1140, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 14, 1986.

Robert F. Kahoe, Jr., Bel Air, for appellant.

Linda Koerber Boyd, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Deborah B. Bacharach, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before WILNER, ADKINS and ROSALYN B. BELL, JJ.

WILNER, Judge.

For nearly eight years, the Comptroller of the Treasury has been trying to recover retail sales taxes that he claims should have been paid by a now-defunct sole proprietorship that was owned and operated by appellant Winton B. Osborne. We shall declare his effort at an end; we believe that the Comptroller is barred by the four-year statute of limitations set forth in Md.Code Ann. art. 81, § 342(a) from maintaining any action against Mr. Osborne to collect the taxes.[1]

Tax cases are seldom easy. This one has a long and somewhat tortured history and involves meshing a number of statutes. We shall start with the statutes, all of which are part of the Retail Sales Tax Act—Md.Code Ann. art. 81, §§ 324–371.

---

1. For convenience, we shall generally regard the term "tax" or "taxes" as including appropriate interest and penalties.

Section 325 imposes what is essentially a 5% tax on the retail sale of tangible personal property and on the dispensing of certain services. The vendor is required to collect the tax from the vendee and to remit it, on a monthly basis, to the Comptroller. Sections 335 and 337 require the vendor to file a return on the 21st of each month showing the taxable sales made during the next preceding month and to remit, with the return, the tax due on those sales. Section 339 provides that:

> "The taxes for the period for which a return is required to be filed by § 335 of this subtitle shall be due by the vendor and payable to the Comptroller on the date limited for the filing of the return for such period, without regard to whether a return is filed or whether the return which is filed correctly shows the amount of receipts and the taxes due thereon."

Although the tax is to be paid, in the first instance, by the vendee, the vendor "and any officer of any corporate vendor" are personally liable for the taxes required to be collected, whether or not the vendor actually collects the tax. §§ 328, 331(a). To protect the State's interest in the event of a "bulk sale" by the vendor, § 353 requires a person who buys, in bulk, the merchandise or fixtures of a vendor to notify the Comptroller of the sale at least ten days before taking possession. If the purchaser fails to give that notice, he "shall be personally liable for the payment to the State of any taxes theretofore or thereafter determined to be due to the State from the vendor." § 356.[2] In the Comptroller's parlance, a purchaser against whom liability is asserted under § 356 is known as a "successor to vendor."

---

[2] The purpose of the notice is to permit the State to assert its lien for unpaid taxes against the consideration payable to the vendor. Section 355 provides, in relevant part, that the consideration payable by the purchaser "shall be subject to a first priority, right and lien" for taxes due from the vendor, and forbids the transfer of such consideration to the vendor "to the extent of the amount of the State's claim for unpaid taxes...."

Collection procedures are dealt with in a number of sections. For our purposes, §§ 324(q), 345(a), 351–52, and 342 are most relevant. Section 324(q) defines "taxpayer"— the term used in the other sections—as "any person required by this subtitle to make returns to the Comptroller or to pay or pay over to the Comptroller the tax imposed by this subtitle."

The Comptroller has general authority under § 358 to conduct audits and investigations. Section 345(a) provides that if the Comptroller finds that a taxpayer "has filed an incorrect return and paid less than the amount of the tax due under this subtitle," he shall "levy a deficiency assessment against the taxpayer, which shall be prima facie correct." Within 30 days after the mailing of a notice of such an assessment, the taxpayer may apply to the Comptroller for a "revision of the tax assessed." § 351(a); *see also* COMAR 03.06.01.80.[3] If a timely application is not filed, however, "the assessment shall become final...." § 351(a). The Comptroller is required by § 351(a)(3) to act "promptly" upon an application for revision and to notify the taxpayer of his decision. If still dissatisfied, the taxpayer, within 30 days after the mailing of such notice, may request (and upon request is entitled to) a formal hearing before the Comptroller (actually, a hearing examiner employed by and representing the Comptroller). The decision of the hearing examiner following a formal hearing "constitutes a final determination of the Comptroller in the case." COMAR 03.06.01.80C.(7). From that final decision, the taxpayer may appeal to the Tax Court (§ 352), and ultimately to the circuit court and to this Court.

Section 342(a) provides that the tax "shall become, from the time due and payable, a personal debt of the person liable to pay the same to the State of Maryland." It states

---

**3.** There does not appear to be any direct statutory obligation to send a notice to the taxpayer, nor do the Comptroller's regulations contain any such obligation. It is certainly implicit from § 351(a), however, that such a notice must be sent and that the assessment is not effective until the notice is sent.

further that "[a]n action may be brought at any time within four (4) years from the time the tax shall be due and payable by the Comptroller in the name of the State to recover [the amounts due]...." Subsection (b) provides that these amounts shall be a lien on the property of "any person liable to pay the same to the State" from and after the time that the Comptroller files a notice of the lien with the circuit court where the property is located. The lien, which the clerk is directed to index on the judgment docket, "shall have the full force and effect of a lien of judgment." *See Farmers & Merchants National Bank of Hagerstown v. Schlossberg,* 306 Md. 48, 507 A.2d 172, 180–181 (1986).

With this background, we turn to the facts of this case, which concern retail sales taxes allegedly due for the period August 1, 1975—August 31, 1977.

The vendor during that period was Harford Excavating Company (Harford Company) which, as we said, was a sole proprietorship owned and operated by appellant Osborne. Effective September 1, 1977, Osborne incorporated Harford Excavating, Inc. (Harford, Inc.), of which he became president and a 96% stockholder, and dissolved Harford Company. Two other individuals—Messrs. Clarendon and Anzalone—also became officers of Harford, Inc.

On July 12, 1978, following an audit, the Comptroller determined that $16,796 in taxes was due for the period noted. Believing that Harford, Inc. was a "successor to vendor" and was therefore liable under § 356, he notified the corporation that an assessment in that amount had "been recorded against your account...." The notice informed Harford, Inc. of its right to seek a revision and warned that if a timely application was not filed, the assessment would become final "and a lien will be filed immediately...." Harford, Inc. apparently applied for a revision, but, after an informal conference, the Comptroller confirmed the assessment. No further action was taken by the corporation and so, on November 27, 1978, the assessment against it became final.

The finality of the assessment did not produce the money, in part, perhaps because at some point Harford, Inc. went into bankruptcy. On January 5, 1979, the Comptroller wrote to Osborne, with copies to Clarendon and Anzalone, warning that unless he contacted the Comptroller by January 15, a lien would be placed against the corporation "and all officers of the corporation will be assessed individually." Osborne did not respond; Clarendon, however, as vice-president of Harford, Inc., wrote to the Comptroller denying liability for the assessment. He argued:

"Messrs. Clarendon and Anzalone joined Harford Excavating, Inc. on the date of incorporation, September 1, 1977 and had no prior knowledge or were in any way connected with the actions of Harford Excavating Co. prior to that time. Harford Excavating Co. was a sole proprietorship operated by Winton B. Osborne and any settlement due the state of Maryland should be borne by him. We ask that the state makes [*sic*] a definite distinction between the two companies and that Messrs. Clarendon and Anzalone are not held individually responsible for the acts of Harford Excavating Co. for the aforestated reasons."

The Comptroller decided not to make the distinction requested by Mr. Clarendon, at least as to Osborne. Instead of proceeding against Osborne as the sole proprietor of the entity that actually (or allegedly) owed the tax, he elected to pursue him exclusively in his double-derivative status as an officer of the "successor to vendor." On January 17, 1979, the Comptroller notified "Winton B. Osborn—Officer Harford Excavating, Inc." that an assessment of $17,293 for the period August 1, 1975 through August 31, 1977 had been recorded against his account.

Osborne finally reacted. He filed a timely request for revision, and, when that was denied, he sought a formal hearing, challenging both the assessment itself and the lack of timely notice to him. His argument as to the notice was that, since liability was being asserted against him as an officer, he was entitled to notice at the same time as the

corporation, i.e., July, 1978. Following a hearing, the Comptroller's hearing examiner determined that (1) Osborne was precluded from contesting the underlying assessment against Harford, Inc., as that had become final in November, 1978, and (2) he was not entitled to notice of the assessment until the assessment against the corporation became final and personal liability was asserted against him as an officer. Dissatisfied with those conclusions, Osborne appealed to the Tax Court which, on May 21, 1981, remanded the matter to the Comptroller. The Tax Court agreed that the notice of January 17, 1979, was sufficient but concluded that, under due process principles, Osborne had to be given an opportunity to contest the merits of the assessment. The Comptroller disagreed; he appealed, first · to the Circuit Court for Harford County and then to this Court. In an unreported Opinion (*Comptroller v. Osborne,* S.T.1982, No. 777, Opinion filed January 21, 1983), we affirmed, concluding that "[d]ue process considerations require that the Comptroller permit a corporate officer whom he intends to hold liable for corporate tax under section 331(a) to attack the merits of the assessment against the corporation."

Eventually, the case returned to the Comptroller whose hearing examiner, on December 20, 1983, decided that Osborne was correct in his attack on the underlying assessment against Harford, Inc.[4] That corporation, he concluded, was *not* a "successor to vendor," and thus no liability against it would accrue under § 356. That, of course, also disposed of any claim against Osborne as an officer of Harford, Inc. The collapse of that theory of liability did not dissuade the Comptroller from his pursuit of Mr. Osborne, however; the hearing examiner declared Osborne directly liable for the tax as the sole proprietor of the entity that initially should have paid it, an alternative theory that had

---

4. We don't know why it took so long for the case to be decided on remand. As noted, our Opinion was filed January 21, 1983, and there is no record of a petition for *certiorari* in the Court of Appeals.

always been available to the Comptroller but was not really pressed until after the remand from this Court.[5] In reaching that result, the hearing examiner rejected Osborne's renewed complaint about the notice and his argument that the action was barred by the § 342(a) statute of limitations.

Osborne then became the appellant, first to the Tax Court, then to the Circuit Court for Harford County, which concluded that the action was not barred by the statute of limitations and that Osborne was estopped from relitigating the issue of notice, and now to us, where he asks:

"Is the Comptroller's 'action' barred by the Statute of Limitations contained in Article 81, Section 342?

Is Osborne estopped from litigating the issue of Notice?

Did the Comptroller give proper notice to Osborne of the alleged assessment?"

The controversy as to § 342(a) concerns the word "action." The section, as noted, provides that an "action" to recover the tax may be brought at any time within four years from the time the tax is due and payable. The tax is

5. At oral argument, the Comptroller suggested that Mr. Osborne's direct personal liability as the sole proprietor had always been at issue, but the record simply does not bear that out. The January 17, 1979 notice is addressed to Osborne specifically as an officer of Harford, Inc. In initially rejecting his application for revision, the Comptroller (through his hearing officer) concluded that "Mr. Osborne's personal liability in this matter does not rest on the taxability of any particular transaction *but upon his status as an officer of the corporation.*" (Emphasis added.) In the first Tax Court proceeding, counsel for the Comptroller framed "[t]he only issue before the Court today" as "whether Mr. Osborne *as an acknowledged officer,* president of Harford Excavating, Inc., is responsible for that assessment." (Emphasis added.) It was the Circuit Court that first observed that Osborne "is liable on two counts, first as the sole proprietor who ran up the tax bill and later as an officer of the Corporation." Yet, despite that statement, in his appeal to us the Comptroller never argued such direct personal liability. The question presented and argued in his brief was whether "Osborne, *as Officer of Harford Excavating, Inc.,* [is] personally liable for unpaid sales and use taxes *owed by that corporation* pursuant to Section 331(a) of Article 81." (Emphasis added.) Unfortunately, in our *per curiam* Opinion, we quoted the statement of the Circuit Court with respect to Osborne's direct liability.

due and payable with the monthly return—the 21st of the next succeeding month. As the assessment against Osborne is now based on his direct liability as the sole proprietor of the vendor/taxpayer, and not in any extended or derivative capacity, the four-year clock began to tick against him as each monthly return came due during the 25-month period at issue.

Osborne construes the word "action," as used in § 342(a) as denoting a proceeding in court, or at least the filing of a lien pursuant to § 342(b), and not any administrative proceedings short of that. This, he argues, is the normal meaning given to the word in the context of statutes of limitations and is consistent with the definition in Md.Rule 1–202(a). The Comptroller takes the view that judicial action is not required, that the filing of an assessment under § 345(a) constitutes the necessary "action," and that the assessment filed against him, as an officer, on January 17, 1979, sufficed to comply with the statute. He tells us that he has been construing the statute that way for 39 years and urges that it would be "absurd" to adopt Osborne's theory, for that would force him to file suit even before a controversy over the assessment is settled.

"Assessment" and "action" are not terms that have constant, immutable definitions. They take their meaning from the context of their use. When dealing with *ad valorem* property taxes, for example, an "assessment" is normally the value assigned to the property upon which the tax is levied, and does not, of itself, measure the actual tax due. *See Grosvenor v. Supervisor of Assess.*, 271 Md. 232, 236–37, 315 A.2d 758 (1974), and cases cited therein. As used in the retail sales tax law, however, the term has a different meaning. It does not purport to measure the sales upon which the tax will be based, but represents and expresses the Comptroller's determination of the actual amount of tax due and payable by a taxpayer, the amount that the Comptroller intends, by whatever means are available to him, to collect from the taxpayer.

**564**

What are those means of collection? One, of course, is mentioned in § 342(b). Once the Comptroller makes a final "assessment," he may file a lien against the taxpayer's property, proceed then to have the property sold, and recover the taxes from the proceeds of sale. Another method is set forth in § 206(a), which provides that:

"Any tax may be collected from the person liable under this article to pay the same by action of assumpsit instituted at any time after said tax shall become due and payable, within the period of limitations prescribed by this article, and such suit may be maintained notwithstanding the existence of other remedies by way of sale of real estate, or otherwise."

*See also* § 208, authorizing the assumpsit action to be commenced by an attachment on original process, but *compare City of Baltimore v. Comptroller*, 292 Md. 293, 439 A.2d 1095 (1982). Note as well § 369 providing criminal penalties for certain willful violations of the law.

■ Fairly read, we think that the "action" referred to in § 342(a)—the one that must be brought within four years—can include either the assumpsit action provided for in § 206 or the filing of a lien under § 342(b). Both of those proceedings are peculiarly directed at actually "recover[ing] the amount of any taxes, penalties and interest due under the provisions of this subtitle," which is the sole focus of § 342(a), and both are routinely brought "in the name of the State," as required by the statute. We do not, however, regard the mere "filing," "levying," or "recording" of an assessment as the equivalent of an "action" to "recover" the taxes, notwithstanding that the Comptroller has long adopted that approach. Although a long-standing construction of a statute by executive or administrative officials charged with implementing it is "a strong, persuasive influence in determining the judicial construction ... '[n]o custom, however venerable, can nullify the plain meaning and purpose of a statute.'" *Balto. Bldg. & Constr. Trades v. Barnes*, 290 Md. 9, 14–15, 427 A.2d 979 (1981), quoting in part from *Rogan v. Baltimore & O.R.R.*, 188 Md. 44, 58, 52

A.2d 261 (1947). Given the contextual meaning of "assessment" in the Retail Sales Tax Act, we see nothing in the law reasonably supporting the Comptroller's view that the recording of an assessment constitutes an "action" under § 342(a). The assessment, as we said, is merely the Comptroller's ascertainment of what is due, and, while that is certainly a prerequisite to the recovery of the tax, the assessment is not, itself, directed at recovery or collection. Nor, unlike actions under § 206 or liens filed under § 342(b), is it "in the same name of the State," as required by § 342(a).[6]

It goes without saying, of course, that, if an action to recover the tax under § 206 or § 342(b) must be filed within four years, the predicate assessment upon which such an action necessarily rests, must also be filed within the four-year period. *See Mechlin v. Comptroller*, 48 Md.App. 242, 426 A.2d 1387 (1981). This proceeding, now before us, concerns only the timeliness of the assessment, and, while any answer to that question may largely be moot if, as

---

**6.** We do not regard this view as "absurd" or as necessarily creating administrative hardships. In the first place, we see no reason why it should take any appreciable length of time to resolve controversies concerning who owes what amount of sales taxes. There are strict time limits on the invocation of review procedures, and it is rare indeed that these cases go beyond the circuit court. The delay in this case strikes us as an extraordinary one, nearly all of which was due to the Comptroller's initial attempt to pursue Osborne solely in his double-derivative capacity as an officer of a "successor to vendor" rather than as the person directly responsible. Moreover, we see no reason why, in the unusual case, the Comptroller cannot protect himself by filing either a lien or a lawsuit pending judicial review of the assessment. The lien, it would seem from § 342(b), can be filed "from and after the time when notice has been given that such tax has become due and payable as provided herein"; that means any time after the Comptroller issues *his* final decision as to the assessment pursuant to § 351. That such a procedure may, in some instances, work to the disadvantage of the taxpayer would be unfortunate, but the law, we think, is clear. Compare 26 U.S.C. §§ 6501 and 6502, providing a two-stage statute of limitations for Federal income and excise taxes—generally, three years to assess and six years after assessment to levy or begin a proceeding to collect the tax. *See also* 26 C.F.R. § 301.6502–1(a)(2), permitting agreements to extend the six-year period for collection actions.

seems clearly to be the case, the Comptroller is absolutely barred from maintaining an "action" to recover the tax, we shall nevertheless provide the answer. We think that the assessment itself was not filed within the four-year period.

As we observed in n. 5, *ante,* in the earlier proceeding, when the Comptroller was pursuing Osborne as an officer of Harford, Inc., the Circuit Court stated that Osborne was liable both as the sole proprietor of the vendor and as an officer of the "successor to vendor," and we adopted that statement. In the context of that proceeding, the first part of the statement, noting Osborne's direct liability, may have been unnecessary *dicta,* but it was not inaccurate. Osborne, indeed, was primarily liable for the tax as the sole proprietor of the vendor. Enforcement of that liability, however, is another matter; it is subject to the procedural requirements of §§ 351, 352, and 342.

The distinction between direct liability as a vendor and derivative liability as an officer of a "successor to vendor" is real and significant, especially in light of the Comptroller's original view that Osborne was estopped from contesting the validity of the underlying assessment. The only issue regarded as genuine by the Comptroller in the first proceeding—that triggered by the January, 1979 notice of assessment—was whether Osborne was, in fact, an officer of Harford, Inc. That view necessarily negates any notion that Osborne was being proceeded against in any other capacity. Obviously, if the assessment was intended to be based on Osborne's direct liability as a sole proprietor, even in part, he had to be given the opportunity to raise any defense he might have, including whether any tax was due by the sole proprietorship. On this record, therefore, it is clear to us that, whatever Osborne's statutory liability as the sole proprietor may have been, the January, 1979 assessment did not rest upon, or even seek to invoke, that liability. It was limited solely to Osborne's vicarious liability as an officer of Harford, Inc., which, as we have seen, the Comptroller later found to be non-existent.

■ The fact is that no assessment has ever been filed against Osborne as a sole proprietor. When the Comptroller, in December, 1983, concluded that Harford, Inc. was not a "successor to vendor," the January, 1979 assessment vanished, and there was no other assessment in existence to take its place. By then, of course, the statute of limitations had run. The Comptroller, unfortunately, galloped down the wrong path; by the time he came to a dead end, the right path was statutorily blocked.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.