562 A.2d 1259

**COMPTROLLER OF THE TREASURY, RETAIL SALES TAX DIVISION**

v.

**DIGI–DATA CORPORATION.**

No. 90, Sept. Term, 1988.

Court of Appeals of Maryland.

Sept. 7, 1989.

Linda Koerber Boyd, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Gerald Langbaum, Asst. Atty. Gen., all on brief), Baltimore, for appellant.

Bernard A. Cook (William G. Ohlhausen, David M. Abramson, Levan, Schimel, Richman & Belman, P.A., all on brief), Columbia, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL and CHARLES E. ORTH, Jr. (retired), Specially Assigned, JJ.

RODOWSKY, Judge.

A sales tax has been continuously in effect in Maryland for more than forty years. Throughout that time the statute has provided that "[a]n action may be brought" by the Comptroller within a specified number of years from the time the tax is due in order to recover sales taxes. *See,*

*e.g.,* Md.Code (1957, 1980 Repl.Vol.), Art. 81, § 342(a).[1] The Comptroller asserts that the quoted words are satisfied by a deficiency assessment. The appellee submits that nothing short of the filing in court of an action of assumpsit or of a tax lien will do. The Comptroller primarily bases his construction on the tax statutes as a whole and on a long-standing administrative interpretation which is consistent with opinions of this Court. The vendor rests on the ordinary meaning of the quoted words and on an opinion of the Court of Special Appeals which directly addresses the question. For the reasons hereinafter set forth we apply the Comptroller's construction.

This case began as a garden variety administrative appeal of a sales tax deficiency assessment. Appellee, Digi–Data Corporation (Taxpayer), is a manufacturer of computer peripherals. An audit by the Retail Sales and Use Tax Division resulted in the Comptroller's levying, on October 4, 1982, a deficiency assessment against Taxpayer for the period May 3, 1979, through July 13, 1982. The Taxpayer timely applied for revision and proceeded through the informal conference and formal hearing administrative levels of review. *See* Md.Regs.Code tit. 03, § 06.01.80A(2) and .80C(1) (1987). In October 1985, Taxpayer timely appealed to the Maryland Tax Court which remanded to the Comptroller. While Taxpayer was administratively litigating the deficiency assessment, the Comptroller neither sued Taxpayer nor liened its property. While the matter was on remand before the Comptroller, the Court of Special Appeals decided *Osborne v. Comptroller*, 67 Md.App. 555, 508

---

**1.** Unless otherwise specifically indicated all references to Code sections will be to Md.Code (1957, 1980 Repl.Vol., 1987 Cum.Supp.), Art. 81 which contained the statutory provisions in effect at the time of the operative facts in this case. Chapter 110 of the Acts of 1988, which enacted the Tax–General Article of the Md.Code, also repealed former Art. 81. *See* § 2 of Ch. 110, Acts of 1988.

Relevant subtitles of former Art. 81 are the Retail Sales Tax Act, §§ 324–371, the Maryland Use Tax, §§ 372–401 and Admissions and Amusement Tax, §§ 402–411.

A.2d 538, *cert. granted,* 307 Md. 342, 513 A.2d 911 (1986), *appeal dismissed,* 308 Md. 322, 519 A.2d 206 (1987).

*Osborne* involved the construction of § 342(a). It reads: "The tax imposed by this [Retail Sales Tax] subtitle and all increases, interests and penalties thereon shall become, from the time due and payable, a personal debt of the person liable to pay the same to the State of Maryland. An action may be brought at any time within four (4) years from the time the tax shall be due and payable by the Comptroller in the name of the State to recover the amount of any taxes, penalties and interest due under the provisions of this subtitle, but if there is proof of fraud or gross negligence, there shall be no limitation of the period in which the action may be brought. Proof of negligence amounting to twenty-five percent (25%) or more of the tax due shall be prima facie evidence of gross negligence."

The parties in *Osborne* agreed, as do the parties here, that sales taxes become due and are payable to the Comptroller before the twenty-first day of each calendar month by any vendor who, in the preceding calendar month, made any taxable sale at retail. *See* §§ 335, 337 and 339.

Osborne had conducted business as a sole proprietor and, in September 1977, transferred the assets of that business to a corporation of which he was a ninety-six percent owner. In July 1978, the Comptroller assessed the corporation for the period August 1, 1975, through August 31, 1977, on the theory that the corporation had successor liability for taxes due by the sole proprietorship. That assessment became final against the corporation which was bankrupt. In January 1979, the Comptroller assessed Osborne as a principal officer of the successor corporation, thereby asserting a double derivative theory of liability for the tax due prior to September 1977 by Osborne as a sole proprietor. Osborne challenged the assessment and claimed that, since liability was being asserted against him as an officer, he had been entitled to notice at the same time as the corporation. Eventually that assessment reached the Court of Special Appeals which in an unreported opinion of January 1983

held that Osborne should have been given an opportunity to be heard on the merits concerning the assessment levied against the corporation. Following remand, the Comptroller, in December 1983, for the first time assessed Osborne, individually, on the theory that he, as sole proprietor, was the vendor. It is the December 1983 assessment which was before the Court of Special Appeals in the reported version of *Osborne*. While the parties in *Osborne* were climbing up, and being knocked back down, the procedural ladder, the Comptroller had neither sued nor liened to collect from Osborne individually.

The Court of Special Appeals held that the four-year period set forth in § 342(a), during which "[a]n action may be brought at any time," is satisfied only by an action of assumpsit, which is expressly recognized as a tax collection remedy in § 206(a), or by establishing the lien which is authorized by § 342(b).[2] In explaining its conclusion that a

---

2.  Section 206(a) reads:
    "Any tax may be collected from the person liable under this article to pay the same by action of assumpsit instituted at any time after said tax shall become due and payable, within the period of limitations prescribed by this article, and such suit may be maintained notwithstanding the existence of other remedies by way of sale of real estate, or otherwise."
    Section 342(b) reads in relevant part:
    "The tax, and all increases, interests and penalties thereon shall be a lien upon all the property, real and/or personal, of any person liable to pay the same to the State from and after the time when notice has been given that such tax has become due and payable as provided herein. Notice of such lien shall be filed by the Comptroller with the clerk of the circuit court of the county in which said property is located. . . . Each clerk of court shall accurately and promptly record and index all such notices of lien filed with him by the Comptroller and shall enter such lien in the judgment docket of the court, stating the name of the delinquent taxpayer, the amount of the lien and the date thereof. The lien provided for in this section shall have the full force and effect of a lien of judgment. Unless another date is specified by law, the lien arising at the date of nonpayment as in this section specified and provided for, shall continue with the same force and effect as a judgment lien. Any such lien on personal property shall not be effective as against an innocent purchaser for value unless the personal property has been levied upon by an officer of a court."

deficiency assessment did not stop the running of the four-year period, the court said:

"Fairly read, we think that the 'action' referred to in § 342(a)—the one that must be brought within four years—can include either the assumpsit action provided for in § 206 or the filing of a lien under § 342(b). Both of those proceedings are peculiarly directed at actually 're-cover[ing] the amount of any taxes, penalties and interest due under the provisions of this subtitle,' which is the sole focus of § 342(a), and both are routinely brought 'in the name of the State,' as required by the statute. We do not, however, regard the mere 'filing,' 'levying,' or 're-cording' of an assessment as the equivalent of an 'action' to 'recover' the taxes, notwithstanding that the Comptroller has long adopted that approach. Although a long-standing construction of a statute by executive or admin-istrative officials charged with implementing it is 'a strong, persuasive influence in determining the judicial construction ... "[n]o custom, however venerable, can nullify the plain meaning and purpose of a statute." ' ...
Given the contextual meaning of 'assessment' in the Retail Sales Tax Act, we see nothing in the law reason-ably supporting the Comptroller's view that the recording of an assessment constitutes an 'action' under § 342(a). The assessment, as we said, is merely the Comptroller's ascertainment of what is due, and, while that is certainly a prerequisite to the recovery of the tax, the assessment is not, itself, directed at recovery or collection."

67 Md.App. at 564–65, 508 A.2d at 543 (citations omitted).

The court then rejected the argument that its construc-tion was "absurd" or created administrative hardships. In significant part that rejection reads:

"The delay in this case strikes us as an extraordinary one, nearly all of which was due to the Comptroller's initial attempt to pursue Osborne solely in his double-derivative capacity as an officer of a 'successor to vendor' rather than as the person directly responsible. Moreover, we see no reason why, in the unusual case, the Comptroller

cannot protect himself by filing either a lien or a lawsuit pending judicial review of the assessment. The lien, it would seem from § 342(b), can be filed 'from and after the time when notice has been given that such tax has become due and payable as provided herein'; that means any time after the Comptroller issues *his* final decision as to the assessment pursuant to § 351. That such a procedure may, in some instances, work to the disadvantage of the taxpayer would be unfortunate, but the law, we think, is clear."

*Id.* at 565 n. 6, 508 A.2d at 544 n. 6.

As an alternative ground of decision the Court of Special Appeals pointed out that the Comptroller had not assessed Osborne within four years from September 21, 1977, because the assessment of January 1979 was limited to Osborne's capacity as a principal officer of the successor corporation.

We granted certiorari in *Osborne* only to learn at oral argument that the Comptroller had acquiesced in the distinction made by the Court of Special Appeals between Osborne as a principal officer of the successor and as a sole proprietor and that the Comptroller had abated the assessment. Thus, the Comptroller was attempting to appeal from the portion of the *Osborne* opinion dealing with the construction of § 342(a). We dismissed the appeal. *Comptroller v. Osborne*, 308 Md. 322, 519 A.2d 206 (1987).

Meanwhile, the parties to this appeal agreed upon the amount of the deficiency assessment and agreed that the sole issue between them was Taxpayer's contention, rejected by the Comptroller, that the *Osborne* construction of § 342 was correct and time barred Taxpayer's liability. Taxpayer again appealed to the Maryland Tax Court. In an oral opinion by acting Chief Judge William B. Calvert, that agency viewed *Osborne's* construction of § 342(a) to be

dicta.[3] The agency held that a deficiency assessment was an "action ... brought" because "from a practical standpoint ... as basically real estate lawyers, [the *Osborne* construction] would become a very harrowing experience for property owners." Joint Record Extract at 75. In the agency's view the General Assembly intended that the Comptroller would obtain a lien when there was "a known figure that the Comptroller is in fact pursuing." *Id.* at 76.

Taxpayer appealed from the order of the Maryland Tax Court to the Circuit Court for Howard County. That court considered *Osborne*'s construction of § 342(a) to be dicta but agreed with the rationale and reversed the Maryland Tax Court. The Comptroller appealed to the Court of Special Appeals. We issued the writ of certiorari on our own motion prior to consideration of the case by the intermediate appellate court.

Fully articulated, the Comptroller's position is that, although a deficiency assessment alone satisfies § 342(a), that official must nevertheless collect the tax "by an action at law or a suit in equity" within seven years from the assessment pursuant to proviso (c) of § 212. That section reads in its entirety as follows:

"All State, county or city taxes of every kind for which no other period of limitation is prescribed by this article shall be collected within 7 years after they shall have become due, or else shall be utterly barred; and no such taxes shall be collected after said period; provided (a) that when collectors shall have failed to collect such taxes and receivers or trustees have within said period been appointed to complete the collection thereof, the period

---

**3.** We read the Court of Special Appeals to have made alternative holdings in *Osborne*. The primary, but broader, holding is the construction of § 342(a). That court further held that, even if the Comptroller's construction were correct, the Comptroller had failed to assess within four years after the taxes were due. The Comptroller argues to us that the latter ruling is the only holding in the case, apparently on the theory that only the narrower ground of decision is a holding. Inasmuch as the matter is now before this Court for decision, the debate is academic.

for collection thereof shall be extended for two years from the time of the appointment of such receivers or trustees, and (b) that any action at law or suit in equity for collection of such taxes or for sale of property to pay the same or for the enforcement of any lien therefor, may, if instituted within the period hereinabove prescribed be prosecuted as if this section had never been passed, and any judgment or decree therein may be enforced or renewed as other judgments or decrees, and (c) that where the assessment of any tax imposed by this article has been made within the period of limitation properly applicable to such assessment, such tax may be collected by an action at law or suit in equity if commenced within 7 years after the assessment of the tax."

Appellee, in addition to embracing all of the reasons advanced in *Osborne*, submits that the taxpayer who does not wish to have a lien imposed on the taxpayer's property or defend a collection suit in court, while the taxpayer is pursuing administrative review of an assessment, can give the Comptroller a waiver of limitations which the Comptroller should be willing to accept. Taxpayer also contends that § 212 has no application because the sales tax is not a tax "for which no other period of limitation is prescribed by [Art. 81]." § 212. Since 1982 the § 212 limitations period has been seven years while the period under § 342(a) has remained four years.

The answer to the question presented in this case lies in the legislative, administrative and judicial history of §§ 342(a) and 212.

The Retail Sales Tax Act was enacted by Ch. 281 of the Acts of 1947. The model for § 342(a) (then codified at Md.Code (1939), Art. 81, § 278(a)) seems to have been a provision of the Emergency Gross Receipts Tax, enacted by Ch. 188 of the Acts of 1935, which was operative from April 1, 1935, through March 31, 1936. That tax statute added to Md.Code (1924, 1935 Cum.Supp.), Art. 56, title, "Licenses," a number of new sections one of which, § 72–J, read:

"Every tax imposed by this Act and all increases, interest and penalties thereon shall become, from the time due and payable, a personal debt from the person liable to pay the same to the State of Maryland, and action may be brought at any time by the Comptroller in the name of the State to recover the amount of any taxes, penalties and interest due under the provisions of this Act."

In cases of tax delinquency, § 72–G of the Emergency Gross Receipts Tax permitted the Comptroller to compute the tax "from the best information available" and the Comptroller's determination was prima facie correct. Under § 72–H any tax due became a lien, without notice by a public filing.[4]

The 1947 Retail Sales Tax Act took the format of the 1935 enactment concerning an "action," inserted a six-year period of limitations, and combined that provision with an automatic lien.[5] The precursor of § 342, Md.Code (1939),

---

4. The Emergency Gross Receipts Tax is extensively discussed in Jones v. Gordy, 169 Md. 173, 180 A. 272 (1935), in which that enactment is in large part sustained on a constitutional challenge.

5. One commentator has described in broad brush strokes the origin and quality of the statutory drafting in the early sales tax statutes in this country and Canada.

"The majority of the American sales taxes were introduced during the middle of the decade of the 'thirties, 1933 to 1935, as the states sought desperately to gain additional revenue to cover expenditures and to meet political demands for property tax reduction. Rejected by most economists as medieval anachronisms, the taxes were drawn up hastily, with little thought to their exact aims beyond raising money, their economic effects, or the best structures in terms of the desired purposes. States introducing the levies subsequently copied the laws of the pioneers in the movement. Typically the taxes were regarded as temporary expedients, designed to raise money quickly, and destined for elimination once the depression was over.

"After the introduction of the Kansas law in 1937, no new sales levy was introduced in the United States for a ten-year period; in 1947 four new taxes [including Maryland's] were introduced, and one additional in 1949.... In general, these postwar levies were merely copied from the laws of the 'thirties; the Canadian laws were modeled to a large extent on American practise. Meanwhile the earlier laws, except for a few which had been repealed, had lost

Art. 81, § 278, as enacted by Ch. 281 of the Acts of 1947, read in toto:

"(a) The tax imposed by this sub-title and all increases, interests and penalties thereon shall become, from the time due and payable, a personal debt of the person liable to pay the same to the State of Maryland. An action may be brought at any time within six (6) years from the time the tax shall be due and payable by the Comptroller in the name of the State to recover the amount of any taxes, penalties and interest due under the provisions of this sub-title, but such actions shall be utterly barred after the expiration of the aforesaid six (6) years.

"(b) The tax, and all increases, interests and penalties thereon shall be a lien upon the property of any person liable to pay the same to the State for a period of four (4) years from and after the time when such tax becomes due and payable as provided herein."

In that 1947 tax statute § 281(a) provided that the Comptroller "shall levy a deficiency assessment" against a taxpayer who had "paid less than the amount of tax due."

We can now test for the 1947 legislative intent with respect to the meaning of "action" in terms of the contentions of the parties to this case. Literally the lien contemplated by former § 278(b) arose automatically whenever there was a deficiency and even if the deficiency had not been alleged by the Comptroller in an assessment. In the 1947 form of the statute the Comptroller did not have to file a lien to satisfy the "action" requirement because the lien, at least in statutory terms, arose whenever the taxpayer failed to pay all of the taxes that were due. In 1947, § 212 (then codified at Md.Code (1939), Art. 81, § 160) contained a four-year statute of limitations and also contained proviso (c) which had been added by Ch. 701 of the Acts of 1941 to

their temporary nature and had come to be regarded as permanent parts of the tax structure."
J. Due, *Retail Sales Taxation in Theory and Practice,* 3 Nat'l Tax J. 314, 314–15 (1950) (footnote omitted).

provide an additional four years for the bringing of a collection action "where the assessment of any tax imposed by this Article has been made within the period of limitation properly applicable to such assessment. . . ."

When we apply the Comptroller's theory to the 1947 laws, the sales tax collector, under § 342's predecessor, had six years from the tax due date within which to assess and had four years from assessment, under § 212's predecessor, within which to have the assessment become final and to file a suit at law. At that same time, under the Taxpayer's theory, the Comptroller always satisfied the six-year limitations period because the deficiency gave rise to a lien, without further action by the sales tax collector. Thereafter, there would be no period of limitations on a suit to collect because the predecessor to § 212, including its proviso (c), did not apply. From an original intent standpoint, the Comptroller's construction is more reasonable.

Section 342(b)'s requirement of a public filing for the attachment of a sales tax lien was added in 1949 by Ch. 465 of the Acts of that year. The last sentence of § 342(b), protecting innocent purchasers of personalty, was added by Ch. 91 of the Acts of 1958.

In 1957 *Topps Garment Mfg. Corp. v. State*, 212 Md. 23, 128 A.2d 595, came before this Court. The appeal was from a judgment of condemnation on a writ of attachment by way of garnishment under which credits had been seized that were owing to a nonresident manufacturer of uniforms who mailed goods ordered by Maryland residents directly to the purchasers. In stating the facts Judge Hammond said for the Court: "In 1954 the Comptroller of Maryland wrote several times to Topps, requesting an audit of all Maryland sales during the previous six years—the statutory period of limitations is six years—so that he would have a basis for a use tax assessment." [6] *Id.* at 25, 128 A.2d at 596–97.

---

6. The Maryland Use Tax was enacted the same year as the Retail Sales Tax Act. *See* Ch. 681 of the Acts of 1947. This Court has frequently noted that the use tax is complementary to the sales tax, "designed to

In 1960 the Comptroller audited Atlas General Industries (Atlas) and levied a deficiency assessment covering six years beginning with a date in 1954. The basis for the assessment was the absence of statutorily required resale certificates. Atlas pursued administrative review contending that the lack of resale certificates created only a rebuttable presumption of sales at retail and contending that the Comptroller was estopped because tax auditors had not enforced the statutory requirement with comparable vigor in an earlier audit. The matter reached this Court which upheld the assessment. *Comptroller v. Atlas Gen. Indus.*, 234 Md. 77, 198 A.2d 86 (1964). In rejecting the estoppel argument Judge Prescott said for the Court: "By ... Section 342(a), the Comptroller is specifically granted authority to bring an action for failure to pay sales taxes at any time within six years from the time such taxes shall be due and payable." *Id.* at 84, 198 A.2d at 90. This Court then held:

> "We hold that the State is not estopped from asserting its claim for the payment of the taxes herein involved, and, as the action was brought within the time prescribed by statute, the judgment [of the circuit court setting aside the Comptroller's assessment] must be reversed."

*Id.* at 86–87, 198 A.2d at 91. Neither the opinion nor the appellate record in *Atlas Gen. Indus.* indicate that any lien had been filed or assumpsit action instituted within six years from the date in 1954 when the earliest of the taxes assessed would have become due. The reference in *Atlas Gen. Indus.* to the "action ... brought" necessarily refers to the deficiency assessment.

---

prevent Maryland residents from purchasing in other States and avoiding the sales tax here, and injuring local merchants." *Comptroller v. Thompson Trailer Corp.*, 209 Md. 490, 496, 121 A.2d 850, 853 (1956); *see also Quotron Sys., Inc. v. Comptroller*, 287 Md. 178, 186, 411 A.2d 439, 443 (1980) and cases cited therein. Consequently, a number of provisions in the Maryland Use Tax subtitle, including the limitations period, are identical to those contained in the Retail Sales Tax Act. *See infra* note 8.

*Atlas Gen. Indus.* cited favorably an opinion in the Eighth Judicial Circuit by the late Judge J. Gilbert Prendergast, *Bagby Furniture Co. v. Comptroller,* Balto. Daily Record, May 10, 1961, at 3, col. 1 (Balto. City Ct. Mar. 16, 1961). *Bagby* was an appeal from a deficiency assessment covering the period October 1, 1952 through October 31, 1958. The issue involved resale certificates, the assessment was sustained and there is no indication in the opinion that the Comptroller had ever sued or liened.

During the week of September 20–25, 1965, the Comptroller audited a liquor store in Salisbury and then levied a deficiency assessment covering six years beginning September 1, 1959, and ending August 31, 1965. That taxpayer appealed to the Maryland Tax Court contending that the Comptroller was estopped because the audit had not been made at an earlier date. The agency, quoting § 342(a), said that the statute provided a six-year period of limitations and that annual or periodic audits were not required. *See Boulevard Beer Delivery, Inc. v. Comptroller,* Sales Tax No. 1 (Md.Tax Ct. May 31, 1967). There is no indication in *Boulevard Beer* that a suit or lien had been filed, in addition to the assessment's having been levied, within six years following the due date for taxes on sales made in September 1959.

House Joint Resolution No. 66 of the 1968 General Assembly called for appointment of a special committee to study the sales tax, among others. The reduction from six to four years in the limitations period of § 342(a) resulted from legislation recommended by that special committee. *See Report of the Special Joint Legislative Council—Executive Committee on the Maryland Sales, Use, and Admissions Taxes—An In–Depth Study* (1968) (the Report). The Chamber of Commerce of Metropolitan Baltimore had submitted to the special committee that "[t]he statute of limitations for assessment, audit and collection should be reduced from 6 to 3 years" in order to "reduce the expensive and burdensome record-keeping requirements of the present statute." Report at 39. The special committee recommended that both § 342(a) and the companion use tax

provision, § 393(a), be reduced to four years, to coincide with the limitations period of § 212, except in cases of fraud or gross negligence. *Id.* at 18. The recommended bill also deleted from § 342(a) the words, "but such actions shall be utterly barred after the expiration of the aforesaid six (6) years." [7] *Id.* at 47. The bill recommended by the special committee was enacted by Ch. 426 of the Acts of 1969.

From 1969 until 1982 § 342(a) and § 212, the latter both in its general rule and in its proviso (c), established periods

---

7. In the body of the Report the special committee's discussion uses "taking any action" and "bringing action" as interchangeable concepts. We set forth the full context:

"F. Preserve pertinent records of the sales for a period of six years from the time the tax is due and payable.

"Request was made that the six-year limitation for the Comptroller's assessment, audit, and collection be reduced because of the burdensome record-keeping requirements it imposes on business. The general period of limitation set for the collection of taxes by Section 212 of Article 81 of the Annotated Code is only four years. The Comptroller, however, is barred from *taking any action* to collect amounts due the State after the period of limitation. (Emphasis added).

"The Committee concluded that the law should be changed to reduce the time allowed the Comptroller for *bringing action* against persons liable for the Sales Tax to four years unless there is proof of fraud, or negligence amounting to 25 per cent or more of the tax due, in which case there should be no limitation." (Italics omitted; emphasis added).

Report at 18.

In the Report section headed, "Summary of Conclusions and Recommendations," the subject recommendation is described as follows:

"Vendors must now hold their records for a period of six years for auditing purposes, which may be a burdensome requirement for many vendors. It is recommended that the law be changed to reduce this requirement to four years for the assessment, audit, and collection of the Sales Tax, in conformity with the general limitation for the collection of taxes provided for in Section 212 of Article 81 of the Annotated Code but that there be no limitation upon assessment or collection where there is proof of fraud or negligence amounting to 25% or more of the tax due."

*Id.* at 4.

The above-quoted language seems to be an uncritical tracking of the phraseology of the request made by the Chamber of Commerce and does not purport to consider how the term "action" was being applied administratively and judicially. We note that Edward F. Engelbert,

of four years. While the statutes were so aligned one Wilmer Mechlin, on June 8, 1970, brought into Maryland waters a sailboat which he had purchased and federally documented out of state. Almost four years later the Comptroller assessed a use tax to Mechlin.[8] The notice stated the assessment was for "the period June 6, 1970 thru June 6, 1970." The Comptroller revised this notice in October 1974 to correct the assessment period. Mechlin claimed, *inter alia,* that § 393(a) time barred the assessment because the April assessment was void and the October assessment was not retroactive. In an administrative appeal the Court of Special Appeals upheld the assessment, agreeing with the trial court that the taxpayer " 'had full notice of the assessment within the time limit.' " *Mechlin v. Comptroller,* 48 Md.App. 242, 248, 426 A.2d 1387, 1390 (1981). Review of the appellate record in *Mechlin* fails to disclose the filing of any lien or lawsuit by the Comptroller.

Chapter 135 of the Acts of 1982 amended § 212 to enlarge from four to seven years the time specified both in the general provision and in proviso (c). Section 212 deals with county and city, as well as State, taxes. It appears that the 1982 revision was not inspired by the collection of sales or use taxes. The bill which became Ch. 135, Senate Bill 507, was introduced by the chairman of the Baltimore County Senate delegation at the request of the Baltimore County administration. *See* 1982 Laws of Maryland, at 5695.

*Osborne* was decided after the 1982 amendment to § 212 and before the repeal of Art. 81 in connection with the recodification of parts thereof as the Tax–General Article.

---

longtime Chief of the Retail Sales Tax Division, died prior to the select committee's final deliberations. *Id.* at 1.

**8.** Section 393(a), applicable to use tax, like § 342(a) states that "[a]n action may be brought at any time within four (4) years from the time the tax shall be due and payable by the Comptroller in the name of the State to recover the amount of any taxes, penalties and interests due under the provisions of this [Maryland Use Tax] subtitle...."

Following recodification, former § 342(c) is part of Md. Code (1988), § 13–1102 of the Tax–General Article (Tax–Gen.). Section 13–1102(a) reads:

"Except as provided in subsection (b) of this section [the fraud or gross negligence exception], an action to recover admissions and amusement tax, motor fuel tax, or sales and use tax may not be brought after four years from the date on which the tax is due."

The Revisor's Note to § 13–1102 disclaims making any substantive change, indicates an awareness of the Comptroller's disagreement with *Osborne*, and in effect leaves the problem now before us for resolution by this Court.[9]

In the recodification former § 212 is found in Tax–Gen. § 13–1103 which in relevant part reads:

"(a) *7–year limit.*—Except as otherwise provided in this section, a tax imposed under this article may not be collected after 7 years from the date the tax is due.

. . . .

"(c) *Collection action after timely assessment.*—If the assessment of any tax has been made within the period of limitations applicable to the assessment, a tax may not be collected after 7 years from the date of the assessment. Any judgment entered may be enforced or renewed as any other judgment."

The Revisor's Note for § 13–1103 similarly disclaims making any substantive change. Contrary to the position taken by Taxpayer in the instant matter, this indicates that provi-

---

**9.** In relevant part the Revisor's Note reads:

"The Tax–General Article Review Committee notes that representatives of the Comptroller's Office objected to placing subsection (a) within the following section [§ 13–1103] captioned 'Time for Collections'. The Court of Special Appeals of Maryland, in *Osborne v. Comptroller,* 67 Md.App. 555 [508 A.2d 538] (1986), appeal dismissed, 308 Md. 322 [519 A.2d 206] (1987), held that the language of former Art. 81, § 342(a) was a limitation period on collections. The Comptroller's Office believes that the section expresses a period of limitations on assessments of tax, rather than for collections. The placement and language utilized by the Tax–General Article Review Committee preserves the status quo on this point."

so (c) of former § 212 could include sales and use taxes. Section 13–1103 does not contain any words, similar to those which had appeared in § 212's introduction, arguably limiting subsection (c) to taxes for which no other statute of limitations is provided.

The consolidated treatment in Tax–Gen. § 13–1102(a) of admissions and amusement tax and of motor fuel tax with sales and use tax directs our inquiry to the antecedent statutory limitations provisions for those other taxes. The motor vehicle fuel tax was imposed by Md.Code (1957, 1988 Repl.Vol.), Art. 56, §§ 135–157. Chapter 714 of the Acts of 1974 had amended § 154 to add subsection (b), a limitations provisions which closely followed the text of § 342(a) relating to sales tax. By Ch. 364 of the Acts of 1981 a lien provision, tracking § 342(b), was added to the motor vehicle fuel tax statutes as § 154(b). Further, in 1981, the 1974 limitations provision was shifted to § 154(a) and was amended to add the following definition or clarification: "For the purposes of this section, the bringing of an action includes the filing of an assessment or the filing of a lien or the filing of any other action provided by law." Presenting the three enumerated types of action in the alternative manifests the intent that taking any one of the actions would fully satisfy § 154(a) limitations.

Prior to the adoption of the Tax–Gen. Article, § 409A of Art. 81, dealing with the admissions and amusement tax, tracked both subsections of § 342. Section 409A was enacted by Ch. 608 of the Acts of 1985. Section 409A did not embody the definition by way of inclusion found in the comparable limitations provision of the motor vehicle fuel tax statutes. Thus, prior to the recodification of the general tax statutes, of the three statutes requiring an action to be brought within four years from the time when the tax was due, two were silent as to the meaning of "action," while one expressly included assessments within the meaning of "action."

Black's Law Dictionary in defining "action" initially presents as synonyms, "[c]onduct; behavior; something

done; the condition of acting; an act or series of acts."
That dictionary next presents the *Osborne* meaning, on
which the instant appellee relies, by saying: "Term in its
usual legal sense means a suit brought in a court; a formal
complaint within the jurisdiction of a court of law." Black's
Law Dictionary 26 (5th ed. 1979).

Despite the fact that minds which "have been trained to
think like a lawyer" automatically lock onto the concept of a
complaint in court when the terms "action ... brought" are
used, it appears that other persons who speak, write and
think in the English language do not so inflexibly limit the
meaning of "action ... brought." Those who drafted the
Tax–Gen. Article obviously did not consider the definition of
"action," as it appeared in the former motor vehicle fuel tax
statutes, to be a special definition which had altered the
plain meaning of "action," even when paired with
"brought." In Tax–Gen. § 13–1102 that former statutory
definition is omitted, and the three taxes (sales and use,
admissions and amusement, and motor vehicle fuel) are
presented with the same time limit within which "an action
to recover" the tax must be "brought." The Revisor's Note
tells us that § 13–1102 "is new language derived without
substantive change" from the predecessor statutes, de-
scribed above. Of course, if those drafting the recodifica-
tion considered that in the context "action ... brought" did
not include levying an assessment, there would be a sub-
stantive change in omitting the definition which had ap-
peared in the motor vehicle fuel tax statutes.

The historical review set forth above also demonstrates
that from the early days of the Retail Sales Tax Act to the
present the administrative interpretation of "action ...
brought" by the Retail Sales and Use Tax Division of the
Office of the Comptroller has been that an assessment of
delinquent tax was the bringing of an action by the Comp-
troller to recover tax due. That interpretation has been
applied by the final assessing authority, the Maryland Tax
Court. Both the Court of Special Appeals and this Court
have accepted the validity of that administrative interpreta-

tion and, although never deciding the question as a contested issue prior to *Osborne,* have rendered judgments which could only have been correct if the administrative interpretation had been correct. "Although never binding upon the courts, the contemporaneous interpretation of a statute by the agency charged with its administration is entitled to great deference, especially when the interpretation has been applied consistently and for a long period of time." *Baltimore Gas & Elec. Co. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307, 1315 (1986). Given the ambiguity in the meaning of "action," discussed above, the long-standing administrative construction is due considerable deference. *See Inlet Assoc. v. Assateague House Condominium Ass'n,* 313 Md. 413, 432, 545 A.2d 1296, 1306 (1988). The long-standing administrative interpretation is further reinforced by tacit legislative approval of, and acquiescence in, the administrative interpretation by amendments to § 342. *See Palm Oil Recovery, Inc. v. Comptroller,* 266 Md. 148, 159–60, 291 A.2d 681, 687 (1972); *Department of Tidewater Fisheries v. Sollers,* 201 Md. 603, 615–16, 95 A.2d 306, 311–12 (1953). In this connection the amendment by Ch. 426 of the Acts of 1969, which reduced the limitations period from six to four years is particularly significant inasmuch as this Court had previously expressed the view that an assessment of sales tax made within six years was an "action ... brought within the time prescribed by statute[.]" *Atlas Gen. Indus.,* 234 Md. at 85, 198 A.2d at 91. In the 1988 recodification, the General Assembly neither endorsed nor rejected the *Osborne* construction, but preserved the *status quo.*

The Taxpayer's construction of §§ 342 and 212 also produces an unreasonable result from the standpoint of administrative procedure and primary jurisdiction. The problem with which we are here concerned most commonly arises when sales tax auditors find that the vendor treats a class of transactions as nontaxable when, in the Comptroller's view, the transactions are taxable. An assessment for the deficiency is made, reaching back to the earlier of four

years or when sales taxes on the class of transaction first became due. As Taxpayer would have it, the Comptroller unilaterally avoids limitations only by filing a suit or lien.[10]

The difficulty with Taxpayer's position is that, in the not uncommon situation where the vendor questions the assessment through administrative and judicial review, there will be dual proceedings. The vendor's administrative review and the Comptroller's assumpsit suit or lien perfection will be pending at the same time. In the judicial proceedings, the vendor almost always will have to retain counsel, at least to prevent a default or to attempt to remove the encumbrance from the vendor's property. Yet, during those proceedings, the court ordinarily should not address the merits of the assessment but should defer to the administrative process. *See White v. Prince George's County,* 282 Md. 641, 387 A.2d 260 (1978). Thus, the dual procedure which the *Osborne* analysis requires in order for the Comptroller to preserve the vendor's tax liability increases the expense, particularly for the taxpayer, without accomplishing any purpose other than to satisfy the legal technician's concept of the plain meaning of "action ... brought."

The primary purpose of all statutes of limitations is to achieve repose after a period of time deemed reasonable by the legislature in light of the competing interests involved. With respect to § 342(a) the Report tells us that the purpose of the reduction in 1969 from six to four years was to reduce the time during which a vendor was required to retain sales records. The Comptroller's construction achieves that purpose to the same extent as does Taxpayer's construction. If the Comptroller has not issued a deficiency assessment, the vendor, at least from the standpoint of sales taxes, may apparently safely discard records for transactions on which taxes might have been due for

---

**10.** Taxpayer also suggests that the Comptroller could get a waiver of limitations by the vendor. A waiver would require agreement by the vendor, and limitations would run during negotiation of a waiver. The only power of the Comptroller to toll the limitations period, under Taxpayer's construction, is to file a suit or lien.

more than four years. If the Comptroller has assessed within four years, then the taxpayer may not safely discard records under the theory of either party because the Comptroller has either satisfied § 342(a) by the assessment alone, or need only further aggravate the taxpayer by a suit or lien claiming the amount asserted in the assessment.

For the foregoing reasons we accept the Comptroller's construction, affirm the assessment and reverse the judgment below. Accordingly, *Osborne v. Comptroller,* 67 Md.App. 555, 508 A.2d 538 (1986), *appeal dismissed,* 308 Md. 322, 519 A.2d 206 (1987) is overruled.

JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT AFFIRMING THE FINAL ORDER OF THE MARYLAND TAX COURT. COSTS TO BE PAID BY THE APPELLEE.