586 A.2d 752

**DUN & BRADSTREET CORP.**

**v.**

**COMPTROLLER OF THE TREASURY.**

**No. 717, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 1, 1991.

Harry D. Shapiro (Robert A. Spar and Weinberg and Green, on the brief), Baltimore, for appellant.

Gerald Langbaum, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and John K. Barry, Asst. Atty. Gen., on the brief), Annapolis, for appellee.

Argued before MOYLAN, ALPERT and CATHELL, JJ.

ALPERT, Judge.

We are asked to decide whether a notice of assessment intended for a subsidiary corporation was legally sufficient when the Comptroller mailed the notice in the parent corporation's name to the parent corporation's address to the attention of the parent's employee who handled the subsidiary's tax audit from which the assessment arose.

## FACTS

Dun & Bradstreet, Inc. (D & B, Inc.) is a wholly owned subsidiary of Dun & Bradstreet Corp. (D & B Corp.). For the calendar years 1981, 1982, and 1983, the Comptroller of the Treasury (the Comptroller) audited the Maryland corporation income tax returns filed by D & B, Inc. Albert J. Franceschini, an employee of the Comptroller who worked out of the Comptroller's New York office, conducted the audit.[1] The audited tax returns all showed the following name and address at the top of page one:[2]

Dun & Bradstreet, Inc.

c/o Dun & Bradstreet Corp.

299 Park Ave.

New York, NY 10171

Unlike D & B, Inc., D & B Corp. did not conduct business in Maryland, file Maryland income tax returns, or undergo an audit by the Comptroller during the time period involved in this case.

---

**1.** The focus of the audit was the propriety of D & B, Inc.'s deduction for claimed losses that arose out of certain "safe harbor leases." Deficiencies for all three years developed when Franceschini disallowed the use of these losses.

**2.** At trial, D & B Corp. introduced the Maryland income tax returns filed by D & B, Inc. for the calendar years 1981, 1982, and 1983. Internal Revenue Service Form 7004 was attached to all three returns. D & B Corp. contends that this form reflected the correct business address of D & B, Inc. In 1981 and 1982, the address listed on these forms was 99 Church Street, NY, New York 10007. In 1983, the listed address was 1 Diamond Hill Road, Murray Hill, NJ 07974.

D & B, Inc. did not have a tax department separate and distinct from that of its parent corporation, D & B Corp. When Franceschini audited D & B, Inc., he dealt with two D & B Corp. employees—Diane Ritucci and Joseph Hartman [3]—whose responsibilities included handling D & B, Inc.'s tax audits. Hartman twice wrote letters to Franceschini, furnishing him with information that Franceschini had requested during the audit of D & B, Inc. The D & B Corp. stationery on which Hartman wrote both these letters had the same Park Avenue address as that which appeared on D & B, Inc.'s Maryland corporation income tax forms. At trial, Hartman acknowledged that it was a common practice for the Comptroller to communicate with taxpayers at the address they placed on their tax returns.

When Franceschini completed the audit, he submitted his report to Richard White, Manager of the Corporation Section of the Comptroller's Income Tax Division. The report indicated the disagreement that existed between Franceschini and D & B, Inc. over the losses that D & B, Inc. claimed from the safe harbor leases. A "notice of assessment" letter, dated June 19, 1986, was prepared over White's signature and addressed as follows:

Dunco Bradstreet, Inc.

c/o The Dun & Bradstreet Corp.

299 Park Avenue

New York, N.Y. 10171

The letter also was addressed to the attention of "Tax Department—Mr. Joseph A. Hartman." At trial, White testified that he had no real independent knowledge of what happened to that letter. His "best guess" was that he noted the incorrect name which appeared on the letter and had it retyped. Hartman testified that he never received the letter.

---

**3.** Diane Ritucci left D & B Corp. in February 1986. Joseph A. Hartman was a senior tax analyst at the time of the trial.

A second "notice of assessment" letter, dated June 23, 1986, was prepared over White's signature and addressed as follows:

Dun & Bradstreet Corp.

Attn: Mr. Joseph A. Hartman, Tax Dept.

299 Park Ave.

New York, NY 10171

The audit work papers that Franceschini prepared—several of which contained references to D & B, Inc. at the top of the page—were attached to the second letter. Hartman received the second letter on June 23, 1986.

On July 18, 1986, D & B Corp. filed a petition of appeal in the Maryland Tax Court in response to the June 23, 1986 notice of assessment, stating that "it had not engaged in any business activity and had no income allocable to the State of Maryland for the years in question." On September 14, 1989, the Tax Court held a hearing in which it took testimony and received documentary evidence. Hartman testified that upon receipt of the assessment notice, he investigated the files and found that the State of Maryland was not auditing D & B Corp. Hartman subsequently determined, however, that the Comptroller was auditing D & B, Inc. When Hartman compared D & B, Inc.'s taxable income figures with those in the assessment notice and found that they matched,[4] he had no question that it was D & B, Inc., not D & B Corp., that "was assessed."[5] That both D & B Corp. and D & B, Inc. had actual knowledge

---

4. The audit work papers contained a computation of D & B, Inc.'s Maryland taxable income for all three years. Franceschini began his computations with the amount of federal taxable income as taken from D & B, Inc.'s federal income tax returns. For all three years, the starting point on the audit work papers coincided with the amount of federal taxable income that D & B, Inc. reported on line 1 of its Maryland returns.

5. It is important to note that Hartman was the last person with whom Franceschini had dealt during D & B, Inc.'s audit, and that those dealings focused solely on the audit and D & B, Inc.'s tax liability. Franceschini never had conducted an audit of D & B Corp., nor had he discussed D & B Corp.'s tax liability with Hartman.

that the June 23, 1986 assessment letter was intended for D & B, Inc. further is supported by the correspondence sent by Harry D. Shapiro, Esquire, D & B's Maryland counsel, to Paul Butler, Esquire, in-house counsel with Dun & Bradstreet's corporate tax department in New York. That letter, dated August 13, 1986, notes that "the State [the Comptroller] has not picked up the different corporate entities."

Although the Tax Court found that D & B Corp. "had actual knowledge of the fact that the assessment made against Dun & Bradstreet Corp. was intended to have been made against its subsidiary, Dun & Bradstreet, Inc.," the Tax Court nevertheless reversed the Comptroller's assessment. Specifically, the Tax Court concluded that (1) the Comptroller had made the assessment against D & B Corp., (2) the Comptroller should have assessed the tax liability against D & B, Inc., not D & B Corp., and (3) the Tax Court had no authority to find D & B, Inc. liable for the tax assessed against D & B Corp.

The Comptroller appealed to the Circuit Court for Baltimore City. The trial judge (Ellen M. Heller, J.) reviewed the record and heard counsel's argument. In her comprehensive and well-reasoned memorandum opinion, the trial judge concluded that the Tax Court erred as a matter of law, and entered an order that reversed the Tax Court's decision. The trial judge found that the Comptroller had mailed a notice of assessment to the taxpayer, D & B, Inc.; although the invoice incorrectly referred to D & B Corp. instead of D & B, Inc., "everything else was correct: the address; the agent, Mr. Hartman; and all of the supporting documentation." The trial judge then analyzed: (1) Maryland case law, (2) federal case law that dealt with the analogous statutory notice of deficiency, (3) service of process cases, and (4) the Uniform Commercial Code's required notification procedures. From this, the trial judge concluded that all gave rise to the same result: (1) that the taxpayer, D & B, Inc., had received adequate notice, and (2) that the Comptroller had entered an assessment against it.

D & B Corp. appeals to us from that ruling and asks the following questions:

I.  Whether the circuit court improperly substituted its judgment for that of the Tax Court?

II.  Assuming that the case presents solely a question of law, whether the assessment made against D & B Corp. was a valid assessment against D & B, Inc.?

## I.

■  D & B Corp. contends that the trial court improperly substituted its judgment for that of the Tax Court.  It argues that the question of whether the assessment notice met the statutory requirements is a mixed question of fact and law, not purely a question of law.  Thus, the trial court should have applied a more deferential standard of review.

■  A reviewing court must affirm an order of the Tax Court if the order is not erroneous as a matter of law and if it is supported by substantial evidence in the record.  *See CBS Inc. v. Comptroller*, 319 Md. 687, 697–98, 575 A.2d 324 (1990).  If the Tax Court bases its decision on a factual determination, and there is no error of law, a reviewing court may not reverse the Tax Court's order if there is substantial evidence in the record to support the agency's decision.  *Ramsay, Scarlett & Co., Inc. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296 (1985).  A reviewing court, however, is at liberty to reverse any order of the Tax Court that is based upon an erroneous conclusion of law.  *Id.*

In this case, the trial court concluded that the question of whether the assessment notice complied with statutory requirements was purely a question of law.  Generally, questions of law are those that do not involve basic factfinding or agency expertise, *State Dep't of Assessments and Taxation v. Loyola Federal Savings & Loan Ass'n*, 79 Md.App. 481, 489, 558 A.2d 428 (1989), *i.e.*, "where the knowledge and experience of the agency is of little guidance to the court or where the case concerns statutory interpretation or other analysis of legal relationships about which courts

have specialized knowledge and experience. . . ." *Ramsay, Scarlett & Co., Inc.*, 302 Md. at 833, 490 A.2d 1296. We think that the case before us calls solely for statutory interpretation. *See* 58 Am.Jur.2d *Notice* § 44 (1989); *Zotta v. Burns*, 8 Conn.App. 169, 511 A.2d 373, 376 (1986) (before submitting to a jury the question of the adequacy of notice, the trial court must first determine whether, as a matter of law, a notice " 'patently meets or fails to meet' " statutory requirements). Consequently, we agree with the trial court that the "substitution of judgment" standard is the appropriate standard of review in this case. *See Ramsay, Scarlett & Co., Inc.*, 302 Md. at 833, 490 A.2d 1296.

## II.

D & B Corp. contends that even if the case presents solely a question of law, the notice of assessment which the Comptroller issued against D & B Corp. was not valid against D & B, Inc.

Article 81, section 309(d) [6] was in effect when the Comptroller sent the notice of assessment in June 1986. Section 309(d) states that "[t]he Comptroller shall mail a notice of any assessment to the taxpayer. In the event the taxpayer is dissatisfied with his assessment, he may within thirty days from the date of notice, appeal to the Maryland Tax Court." Md.Ann.Code. art. 81, § 309(d) (1980 & Supp.1986). Section 10–107 of the Tax–General Article, formerly Article 81, § 304(a), provides that "to the extent practicable, the Comptroller shall apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State." Md.Tax–Gen.

---

6. Effective January 1, 1989, the General Assembly recodified all relevant provisions of Article 81 as part of the Tax–General Article. Act of February 9, 1988, ch. 2, 1988 Md.Laws 8. Article 81, § 309(d) was recodified as Tax–General Article, § 13–411. The General Assembly later renumbered this section and it now is section 13–410. Act of May 2, 1988, ch. 110, 1988 Md.Laws 1988, 1995; *see* Act of May 27, 1988, ch. 569, 1988 Md.Laws 3952, 3958. Both parties agree that the changes which the General Assembly made as part of the recodification were "without substantive change."

Code Ann. § 10–107 (1988); *see also O'Donnell v. Comptroller*, 268 Md. 412, 414, 302 A.2d 42 (1973). D & B Corp. asserts that section 10–107 requires us to apply interpretations of the federal income tax law in construing section 309(d).

The federal tax scheme works as follows: The tax commissioner mails a notice of deficiency to the taxpayer at "his last known address." 26 U.S.C. § 6212(a), (b) (1988). The taxpayer then has a period of time—usually ninety days—in which to petition the U.S. Tax Court for a redetermination of the deficiency. *Id.* § 6213(a). The commissioner cannot assess the taxpayer until the petition period has expired or, if the taxpayer files a petition, until the Tax Court has resolved the matter. *Id.* Once the Tax Court resolves the matter, the commissioner may send the taxpayer a notice of assessment.

By contrast, the Maryland statute simply directs the Comptroller to mail "a notice of any assessment to the taxpayer." [7] Md.Ann.Code art. 81, § 309(d) (1980 & Supp. 1986). Thus, the Maryland "notice of assessment" appears to be a hybrid of the federal provisions, *i.e.*, the Maryland statute combines the notice of deficiency with the notice of assessment so that the taxpayer effectively receives both at once. Under Maryland law, the taxpayer has thirty days in which to petition the Tax Court for a redetermination of the deficiency. *Id.* Like the federal notice of deficiency, Maryland's notice of assessment is the taxpayer's "ticket" into the tax court. *See Estate of Yaeger v. Commissioner*, 889 F.2d 29, 34 (2nd Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1989).

---

7. Section 1–202(a)(1) of the Tax–General Article provides that the Comptroller "shall give each notice required under this article by mailing it, in a postpaid envelope, to the person for whom the notice is intended: (1) at the address in the most recently filed application, report, or return of the person on record...." Md.Tax–Gen.Code Ann. § 1–202(a)(1) (1988). Although this section was not in effect in 1986, the trial court noted that the Comptroller had complied with its provisions.

There are two lines of federal cases: one deals with the notice of deficiency, the other deals with the notice of assessment. The trial court recognized that neither line of cases was directly on point, but concluded that those addressing the notice of deficiency were more analogous for two reasons. First, the notice of deficiency cases deal with notice to the taxpayer of the appeal process. Second, federal income tax law has specific procedures and requirements that the tax commissioner must follow in making an assessment. *See* Treas.Reg. § 301.6203–1 (as amended in 1961); *see also Coson v. United States,* 169 F.Supp. 671, 675–76 (S.D.Cal.1958). Because Maryland has no comparable provisions, the trial court was reluctant to rely on those cases to interpret the State's income tax laws. We agree with the trial court's reasoning on this point.

D & B Corp. asserts that section 309(d)'s requirement that "[t]he Comptroller shall mail a notice of any assessment to the taxpayer" implicitly raises two issues: (1) whether the underlying assessment was valid, and (2) whether notice of the assessment was mailed to the taxpayer. D & B Corp. argues that the assessment itself was invalid because the Comptroller issued it against the wrong taxpayer. It further argues that even if the assessment was valid, the Comptroller did not mail it to the taxpayer as required by the statute.

### (1)

■ D & B Corp. relies on *Osbourne v. Comptroller,* 67 Md.App. 555, 508 A.2d 538, *cert. granted,* 307 Md. 342, 513 A.2d 911 (1986), *appeal dismissed,* 308 Md. 322, 519 A.2d 206 (1987),[8] for the proposition that a notice of assessment is not valid if it fails to name the proper taxpayer. In *Osbourne,* the Comptroller tried to recover retail sales taxes that Osbourne should have paid as the owner and operator of a defunct sole proprietorship. Osbourne, in the

---

8. *Osbourne v. Comptroller,* 67 Md.App. 555, 508 A.2d 538 (1986), was overruled on other grounds by *Comptroller v. Digi–Data Corp.,* 317 Md. 212, 562 A.2d 1259 (1989).

meantime, had formed a second company. The Comptroller pursued Osbourne as an officer of the second company, rather than as sole proprietor, in the mistaken belief that the second company was a successor to the defunct sole proprietorship. The Comptroller assessed Osbourne individually only after Osbourne challenged the assessment against him as an officer of the successor corporation. By then, the four-year statute of limitations in section 342(a) of Article 81 barred the Comptroller from maintaining the action.

*Osbourne* is inapposite because the Comptroller never intended to assess D & B Corp. Further, the error in this case was clerical, rather than substantive, in nature and in effect. *See, e.g., Mechlin v. Comptroller,* 48 Md.App. 242, 426 A.2d 1387 (1981) (four-year statute of limitations did not bar corrected notice of assessment when taxpayer had received original notice with incorrect assessment period within the statutory time limit). The address on the first letter was to:

Dunco Bradstreet, Inc.

c/o Dun & Bradstreet Corp.

299 Park Ave.

New York, NY 10171

The letter also was directed to the attention of Joseph Hartman. Clearly, the address followed that found on D & B, Inc.'s corporate income tax returns except that a distracted typist added "co" instead of an ampersand in the first line.

The address on the second letter omitted entirely the reference to Dun & Bradstreet, Inc. This may have been an inadvertent omission or it may not have been. Because the Comptroller had corresponded with Hartman during the audit of D & B, Inc., it is conceivable that an office worker checked the audit file, saw the correspondence from Hartman to Franceschini on D & B Corp.'s stationery, and concluded that Hartman was the agent at the 299 Park Avenue address to whom the audit papers for D & B, Inc.

should be sent. Although D & B Corp. vigorously argues that the assessment notice named the wrong taxpayer, we note that a number of the attached audit papers specifically referred at the top of the page to D & B, Inc., not D & B Corp. This is not a case in which the Comptroller mistakenly assessed the wrong taxpayer.

(2)

■ D & B Corp. further argues that even if the underlying assessment is valid, the Comptroller still failed to mail the notice of the assessment to the taxpayer.

For 1981, 1982, and 1983, D & B, Inc. gave the following address on its Maryland corporate income tax returns:

Dun & Bradstreet, Inc.

c/o Dun & Bradstreet Corp.

299 Park Avenue

New York, NY 10171

Clearly, D & B, Inc. indicated that the Comptroller could reach it "care of" D & B Corp. It appears that D & B, Inc. listed this address because it wanted the Comptroller to send yearly tax forms to the place where the returns actually would be prepared, and to otherwise correspond directly with those assigned to handle D & B, Inc.'s tax matters. This is not a case in which the Comptroller mistakenly mailed a notice of deficiency intended for one corporation to an affiliated corporation. *See Caughey–Jossman Co. v. Commissioner*, 8 B.T.A. 201, 1927 WL 262 (1927); *New York Talking Machine Co. v. Commissioner*, 13 B.T.A. 154, 1928 WL 205 (1928); *Phoenix National Bank v. Commissioner*, 14 B.T.A. 115, 1928 WL 27 (1928).

D & B Corp., however, still argues that the Comptroller did not send notice to D & B, Inc.'s proper address, *i.e.*, that listed on I.R.S. Form 7004.

The federal tax law instructs the tax commissioner to correspond with a taxpayer at the taxpayer's last known address. 26 U.S.C. § 6212 (1988). No comparable Mary-

land provision existed when the Comptroller sent the notice of assessment in 1986. *See supra* note 7.

The Comptroller successfully had communicated with D & B, Inc. at the 299 Park Avenue address in the past, most recently when Franceschini conducted his audit of D & B, Inc. We further note that on its petition to the Tax Court on the same issue (the safe harbor leases), D & B, Inc.'s sister corporation, R.H. Donnelley, also gave its address as c/o Dun & Bradstreet Corporation, 299 Park Avenue, New York, New York 10171, *not* the address listed on I.R.S. Form 7004.

We assume that D & B Corp. approved of, if not mandated, these arrangements with its subsidiaries to facilitate the shared use of its tax department. Consequently, we believe that the Comptroller mailed the notice to the taxpayer as required by section 309(d).

(3)

The Second Circuit recently addressed the issue of whether a notice of deficiency was legally sufficient in *Estate of Yaeger v. Commissioner*, 889 F.2d 29 (2nd Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1989). We find the court's reasoning to be persuasive as to the validity of the assessment notice in this case. In *Yaeger*, a taxpayer—Louis Yaeger—died on May 11, 1981. *Id.* at 34. His estate filed form 1040 on his behalf for the period January 1, 1981 through May 11, 1981. *Id.* The estate, itself a new taxpayer, elected April 30 as the end of its fiscal year, and filed form 1041 for the period May 11, 1981 to April 30, 1982. *Id.*

On April 15, 1983, the Commissioner issued two notices of deficiency to the estate. *Id.* The first notice indicated deficiencies for the tax years ending December 31, 1979 and December 31, 1980, while the second indicated a deficiency for the tax year ending December 31, 1981. *Id.* The following documents accompanied the notices of deficiency: a waiver form; a statutory notice statement, which explains the adjustments; a statement of income tax

changes; an explanation of the adjustments made in these changes; a corrected investment interest expense deduction form (form 4952); and a corrected alternative minimum tax computation form (form 5251). Computations illustrating the corrections accompanied the latter two forms.

*Id.*

On July 15, 1983, Yaeger's estate petitioned the tax court for a redetermination of the deficiencies. *Id.* The estate later moved to dismiss for lack of jurisdiction that part of the petition referring to the calendar year ending December 31, 1981, arguing that the notice was invalid because it referred to neither the tax year ending May 11, 1981 nor the tax year ending April 30, 1982. *Id.* Noting that its jurisdiction depended on the commissioner's issuance of a notice of deficiency, the Tax Court granted the motion. *Id.* The court explained that it could ignore errors in the notice which related to the tax year so long as they would not mislead the taxpayer. *Id.* Because the first page and accompanying computations both showed the same wrong year, however, the Tax Court concluded that the estate could not determine which taxable year the Commissioner referred to in the notice. *Id.*

The Second Circuit noted that the federal statute did not specify either the form or content of the notice. *Id.* at 35. Because the purpose of the notice is " 'to advise the person who is to pay the deficiency that the Commissioner means to assess him ...,' notice generally must indicate that [the Commissioner has determined a deficiency], and identify the taxpayer, the tax year involved, and the amount of the deficiency." *Id.* (citation omitted). " 'Anything that does this unequivocally is good enough.' " *Id.* (citation omitted). Thus, " 'notice [merely] must meet the general "fairness" requirements of due process.' " *Id.* (citation omitted).

The court further explained that

mistakes in the content of the notice 'which do not frustrate its purpose, are negligible.' The test for determin-

ing whether the notice's purpose was accomplished is whether the taxpayer reasonably knew or should have known that the deficiency notice was directed to the taxpayer, that a deficiency determination was made, the taxable year involved, and the amount of the deficiency. This objective standard focuses on whether the taxpayer was justifiably misled or deceived by a mistake in the notice. Thus, '[n]otices containing technical defects are valid where the taxpayer has not been prejudiced or misled by the error and is afforded a meaningful opportunity to litigate' the claims.

The taxpayer must demonstrate that the notice was misleading. In addition, although the commissioner is not required to indicate the basis for the deficiency determination, any statements or computations in or appended to the notice should be considered.

*Id.* at 35–36 (citations omitted).

In *Yaeger*, the Second Circuit found that the Tax Court had "incorrectly confined its inquiry to the date listed on the notice of deficiency and attached computations." *Id.* at 36. The statutory notice statement stated more than once that the tax deficiency arose from the Commissioner's reclassification of Yaeger from a securities trader to a securities investor. *Id.* at 36. The statement of income tax changes indicated that the notice was for individual income tax form 1040, rather than fiduciary income tax form 1041. *Id.* The box marked "individual" was checked on the investment interest expense deduction form under "Kind of Return." The court concluded that the estate clearly knew the Commissioner had calculated the deficiency for Yaeger, not his estate. Further, the estate "should have understood that the deficiency related to Yaeger's 1981 tax year, which ended May 11, 1981." *Id.*

The Second Circuit also noted that "every adjustment in the attachments to the notice of deficiency related to items reported on form 1040 for tax year ending May 11, 1981." *Id.* The estate, however, complained that one of the figures on the investment interest expense deduction form was

misleading. *Id.* The estate found the figure misleading because it "far exceed[ed]" the interest expenses reported on schedule C of Yaeger's 1040 form, but was close to—although not identical with—the interest amount reported on schedule C of the estate's 1041 form. *Id.* Although the court agreed that the figure did not appear on Yaeger's form for the January 1, 1981–May 11, 1981 period, it failed to see how this misled the estate. *Id.* Because the Commissioner adjusted Yaeger's income after reclassifying Yaeger as an investor rather than a trader, the Commissioner had to recalculate Yaeger's interest expense deductions. *Id.* The corrected interest deduction form necessarily included new figures from these recalculations, including a revised carryover amount for 1979 and 1980 because the Commissioner also had recalculated the deduction for those years. *Id.* The court admonished the estate that "[a] reasonable taxpayer would not rely solely on one figure in this corrected form to determine which year was being assessed." *Id.*

Further, the court said that "a reasonable taxpayer would examine the statement of income tax changes and the computation of the investment income before searching through an unrelated form (the estate's 1041) to find one figure." *Id.* The court noted that the computation used figures from Yaeger's 1040 form and clearly showed how the Commissioner determined the investment income. *Id.* The court concluded by holding that "[t]he notice of deficiency and its attachments clearly and fairly advised the estate that the commissioner intended to assess it for the short period reported in Yaeger's 1981 return." *Id.* at 37.

As noted above, the purpose of notice is to advise the taxpayer of an assessment. A technical error or defect will not invalidate a notice unless the mistake justifiably misled or deceived the taxpayer. We think that under the facts and circumstances of this case D & B, Inc. reasonably knew or should have known that the notice of assessment was directed to D & B, Inc., not D & B Corp.

D & B, Inc. did not have a tax department separate and distinct from that of its parent, D & B Corp. During the audit of D & B, Inc., Franceschini dealt with Diane Ritucci and Joseph Hartman. Ritucci and Hartman both were employees of D & B Corp. at the 299 Park Avenue location in New York, but were responsible for handling D & B, Inc.'s tax audits. When Ritucci left D & B Corp., Hartman provided Franceschini with the information for D & B, Inc. that he requested for the audit. Hartman used D & B Corp.'s stationery with the 299 Park Avenue address to correspond with Franceschini.

On June 23, 1986, Hartman received the Comptroller's notice of assessment letter with the following address:

Dun and Bradstreet Corp.

Attn: Mr. Joseph A. Hartman, Tax Department

299 Park Avenue

New York, New York 10171

The letter stated that it concerned "Maryland Corporation Income Tax Audit for Tax Years 12/31/81, 12/31/82 & 12/31/83." The letter also stated that the Corporation Section of the Income Tax Division had received and reviewed the recent audits for the above tax years, which Franceschini conducted from the New York field office. Franceschini's audit work papers were attached to the notice of assessment letter. Several of these papers contained references at the top of the page to D & B, Inc. Further, they contained a computation of D & B, Inc.'s Maryland taxable income for all three years. Each computation began with the federal taxable income figure taken from D & B, Inc.'s federal income tax returns for those years.

At trial, Hartman testified that after he received the June 23 notice of assessment, he compared the taxable income figures in the audit work papers with D & B, Inc.'s taxable income figures and found that they matched. Hartman concluded that the figures in the work papers pertained to D & B, Inc., not D & B Corp., *i.e.*, it was "Dun and

Bradstreet, not Dun and Bradstreet Corp. who was assessed."

There is no evidence to suggest that either D & B, Inc. or D & B Corp. was in any way misled or deceived by the Commissioner's errors in the notice of assessment. On the contrary, both entities knew shortly after Hartman received the notice for whom it was intended and what it was in reference to. On these facts, we decline to exalt form over substance by requiring slavish adherence to the language of section 309(d). We hold that the notice of assessment was valid against D & B, Inc. and that the Comptroller mailed it to the taxpayer as required by section 309(d).

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.