747 A.2d 232

R. Edwin BROWN, et ux.

v.

COMPTROLLER OF the TREASURY.

No. 6035, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 3, 2000.

R. Edwin Brown, Rockville, for appellants.

Gerald Langbaum and John K. Barry, Asst. Attys. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), for appellee.

Argued before MURPHY, C.J., and MOYLAN and BYRNES, JJ.

BYRNES, Judge.

R. Edwin Brown and Winsome S. Brown, appellants, filed a petition for judicial review in the Circuit Court for Montgomery County of a decision of the Maryland Tax Court affirming a notice of final determination of assessments of additional Maryland income tax entered against them by the Comptroller of the Treasury ("Comptroller"), appellee. The circuit court affirmed the judgment of the tax court. On appeal, the

Browns pose one question for review, which we have rephrased:

> Did the tax court err in ruling that the Comptroller's May 6, 1996 final assessment is not barred by the statute of limitations set forth in § 13–1101(a) of the Tax General Article?

## FACTS AND PROCEEDINGS

The Browns filed Maryland income tax returns for the four years at issue in this case: 1986, 1987, 1988, and 1989. Sometime before November 5, 1992, the Comptroller was notified by the Internal Revenue Service ("IRS") that the Browns' taxable income for the years 1986 and 1987 had been increased by $163,948 and $109,110, respectively, thereby increasing their federal income tax liability by $50,702 and $42,547, respectively. The Browns challenged that determination in the United States Tax Court.

On August 14, 1992, the United States Tax Court entered an order, pursuant to an agreement of the parties, establishing tax deficiencies attributable to the Browns for the years 1986 and 1987 of $50,702 and $42,547, respectively. On November 5, 1992, the Comptroller wrote to the Browns and advised them that it was in receipt of the information from the IRS regarding the adjustments to the Browns' federal income tax returns. The Comptroller's November 5, 1992 letter provided a computation of the Maryland income tax on the increased income and demanded payment. The Comptroller made no adjustments to the Browns' income other than the adjustments that had been made by the IRS. The amount of additional Maryland income tax as reflected in the November 5, 1992 letter was $12,296.10 for 1986 and $12,727.44 for 1987 (before computation of interest and penalty). Approximately two months later, on January 13, 1993, the Comptroller issued formal assessments to the Browns assessing income tax corresponding to the amounts reflected in the November 5, 1992 letter. The assessments imposed a 25% penalty and interest updated to the date of the assessments.

Likewise, with respect to the Browns' taxable income for the years 1988 and 1989, the Comptroller was notified by the IRS that the Browns' taxable income for those years had been increased by $276,214 and $105,412, respectively, thereby producing additional federal income tax liability of $58,005 and $22,302, respectively. Subsequently, the IRS significantly reduced the adjustment to the Browns' 1988 taxable income. The revised information from the IRS reflected that the increase in the Browns' taxable income for 1988 was $72,569, thereby producing a revised increase in the Browns' 1988 federal income tax liability of $15,239.20.

The Browns appealed the federal income tax deficiency determination for 1988 and 1989 to the United States Tax Court also. On April 19, 1994, the United States Tax Court entered an order, by agreement of the parties, establishing that there were federal income tax deficiencies of $15,239 for 1988 and $8,047 for 1989.

On November 17, 1995, the Comptroller was notified by the IRS of the federal adjustments to the Browns' 1988 and 1989 taxable income. Thereafter, the Comptroller issued assessments to the Browns that were computed on the basis of the increase in federal taxable income for the Browns set forth in the order of the United States Tax Court: additional taxable income for 1988 of $72,569 and for 1989 of $105,412. Prior to the Comptroller's assessments, the Browns made a payment of $7,083.50. In computing its assessments, the Comptroller gave the Browns credit for this payment.

In their challenge to the assessments in the Maryland Tax Court, the Browns raised the defense of limitations. The tax court took evidence on that issue, including the testimony of Pamela Porter, the Comptroller's revenue administrator. Ms. Porter testified that the Comptroller's assessments were based only on the increases in federal taxable income, and not on the Browns' total taxable income. She also stated, in affidavit, that at no time had the Browns notified the Comptroller of the IRS's increase in their federal taxable income.

The tax court denied the Browns' motion for summary judgment on limitations on March 5, 1997. Thereafter, it affirmed the Comptroller's assessments, observing that "the numbers that were being used by the Comptroller's office are the precise numbers that were used by the Internal Revenue Service in making the adjustments they made." The tax court entered an order affirming the assessments on October 17, 1997.

The Browns filed a timely petition for judicial review. The circuit court affirmed the judgment of the Maryland Tax Court affirming the Comptroller's assessments. The Browns then noted a timely appeal to this Court.

## STANDARD OF REVIEW

▮▮▮▮ Whether the reviewing court is an appellate court or a circuit court, it is well settled that judicial review of a final order of the Maryland Tax Court is limited. *Genie & Co. v. Comptroller*, 107 Md.App. 551, 563, 668 A.2d 1013 (1995). The standard of review is governed by State Government Article, Md.Code (1988, 1997 Repl.Vol.), § 13–532(a) of the Tax—General Article ("TG"), which distinguishes between the review afforded to decisions rendered on the basis of fact and those rendered on legal grounds. *Genie & Co.*, 107 Md.App. at 563, 668 A.2d 1013.[1] A reviewing court will not reverse the tax court's factual determinations if there is substantial evidence to support them. *Dun & Bradstreet Corp. v. Comptroller*, 86 Md.App. 258, 264, 586 A.2d 752 (1991). A reviewing

---

1. Md.Code (1984, 1999 Repl.Vol.), § 10–222(h) of the State Gov't Article, allows a reviewing court to

   reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
   (i) is unconstitutional;
   (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
   (iii) results from an unlawful procedure;
   (iv) is affected by any other error of law;
   (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
   (vi) is arbitrary or capricious.

court will not accord deference to the tax court's decision on a question of law, however, and will review such a question *de novo*. *Id.* As the questions presented in this case are questions of law, we will apply the latter standard.

## DISCUSSION

The Browns appeal from the Comptroller's assessment of income taxes against them for the years 1986, 1987, 1988, and 1989. They contend initially that the assessments are barred by the statute of limitations contained in TG § 13–1101(a), which provides that, in general, "an assessment of . . . income tax may not be made after 3 years from the later of . . . the date that the return is due; or . . . the date that the return is filed." The Browns maintain that the Comptroller exceeded this limitation when it made assessments against them for the years in question.[2]

The Comptroller counters by citing the provisions of TG § 13–1101 that specifically address the time allowed for assessments to be made after a federal adjustment to a taxpayer's taxable income. In particular, TG § 13–1101(b) states that "[a]n assessment of . . . income tax may be made at any time if . . . a report of federal adjustment is not filed within the period required under § 13–409 of this title." The Comptroller takes the position that because the Browns did not file a report of the federal adjustments of their income within the appropriate time limit, there was no time limitation as to when the Comptroller could make assessments against the Browns.

---

**2.** The date that the assessments were made is in dispute. The Browns contend that the Comptroller's final determination as to the amount of their deficiencies should be the date from which to calculate whether the assessments occurred beyond the statute of limitations. While the Comptroller does not affirmatively dispute this assertion by the Browns, it mentions in passing two earlier dates that it regards as dates of the assessments for the four years in question. Even if these earlier dates were considered operative, however, the Comptroller would have failed to have made the assessments within three years of the date that the Browns' returns were filed or were due. In fact, it appears that the Comptroller was not informed of the adjustments until after the expiration of the three-year limitation period.

The Browns counter that argument by pointing out that the assessments made against their federally adjusted income fall within the provisions of TG § 13–1101(c), which states that "[i]f a report of federal adjustment is filed within the time required under § 13–409 of [TG] of this title, the [Comptroller] shall assess the . . . income tax within one year after the date on which the [Comptroller] receives the report." TG § 13–409 requires that the report of the federal adjustment be made "[w]ithin 90 days after the Internal Revenue Service issue[s] . . . the final determination" of its adjustment.

The Browns do not contend that they ever reported the IRS's adjustments to their income. Instead, they maintain that the reports made by the IRS of the adjustments to their income satisfied the reporting requirement of TG § 13–1101(c), so as to allow them to invoke its time limitation against the Comptroller. According to the Browns, the Comptroller exceeded that time limitation when it failed to arrive at a final determination as to the Browns' deficiencies until May 6, 1996, more than a year after the IRS reported the adjustments.[3]

The Comptroller maintains that because the Browns did not report the adjustment within the time allowed by TG § 13–409, TG § 13–1101(c)'s limitation on the time frame in which it could make assessments did not apply. The Comptroller takes the position that even if it receives a report of an adjustment to a taxpayer's income from a third party within the time specified by TG § 13–409, the limitation set forth in TG § 13–1101(c) still is not triggered unless the taxpayer timely reports the adjustment himself or herself. Thus, because the Browns never filed a report of the adjustments made to their income within the time period specified by TG § 13–409, they could not avail themselves of TG § 13–1101(c)'s time limitation. Instead, as a consequence of their failure to report, the Browns came under the scope of TG § 13–

---

**3.** As observed in footnote 2, assessments were, in actuality, made against the Browns before this date.

1101(b)(5), which removed any time limitation from the Comptroller's ability to make assessments.

■ The Browns' first argument—that the Comptroller is barred by TG § 13–1101(a)'s general three-year limitation against making assessments upon tax returns from the date they are filed or are due—is without merit. TG § 13–1101(a) imposes a three-year limitation for the assessment of income tax from the date that the return is filed or due, "[e]xcept as otherwise provided in [TG § 13–1101]." TG § 13–1101 contains two provisions dealing explicitly with the time allotted to the Comptroller to make assessments against taxpayers whose income has been adjusted by the IRS. TG § 13–1101(b)(5), relied upon by the Comptroller, applies when a report of federal adjustment has not been filed within the appropriate time period, in which case the Comptroller may assess income taxes against the taxpayer at any time. When a report of a federal adjustment has been filed within the applicable period, however, TG § 13–1101(c) proscribes the Comptroller from making assessments against the adjusted income more than one year after its receipt of the report of the adjustment. Under this statutory scheme, if a report is properly filed, TG § 13–1101(c)'s one-year limitation on the Comptroller's ability to make assessments applies; if no report is filed, TG § 13–1101(b)(5)'s removal of all limitations applies. In either case, the three-year limitation contained in TG § 13–1101(a) is inapplicable.

Our analysis of the legal issue in this case turns on whether TG § 13–1101(c) or TG § 13–1101(b)(5) applies. That, in turn, depends upon whether the reporting requirement of TG § 13–1101(c) was satisfied and, if so, whether the assessments in question were made in compliance with TG § 13–1101(c)'s time limitation.

At first blush, it would appear that the plain language of TG § 13–1101(c) favors the interpretation urged upon us by the Browns: that a report of adjustment filed by anyone is sufficient to trigger the limitation contained in TG § 13–1101(c). TG § 13–1101(c) states that "[i]f a report of a federal

adjustment is filed within the time under [TG § 13–409(b) ], the [Comptroller] shall assess the . . . income tax within 1 year after the date on which the [Comptroller] receives the report." TG § 13–409(b) requires that such a report be filed within 90 days of the IRS's final determination of the adjustment.

The statute does not state expressly that a report of federal adjustment filed by the taxpayer is necessary to trigger the one-year limitation. Rather, it states only that *a* report of federal adjustment is needed. This seems to indicate that so long as the federal adjustment is reported to the Comptroller's office, irrespective of the source, within 90 days of the IRS's final determination, the filing requirement of TG § 13–1101(c)is satisfied and the taxpayer may invoke its limitation.

Upon closer examination, however, that interpretation of TG § 13–1101(c) does not obtain. TG § 13–1101(c)requires that a report of federal adjustment be filed with the Comptroller in order to trigger its time limitation, but does not define what constitutes a report of federal adjustment. TG § 13–409, which is cross-referenced in TG §§ 13–1101(b)(5) and 13–1101(c), establishes the requirements of such a report:

> *Report required.*—Within 90 days after the Internal Revenue Service issues to a person the final determination [that increases the taxpayer's federal taxable income], the *person shall submit* to the [Comptroller] a report of federal adjustment that includes:
>
> (1) a statement of the amount of the increase;  and
>
> (2) if the person contends that the final federal determination is erroneous, an explanation of the reasons for the contention.

(Emphasis added.) Thus, TG § 13–409 establishes the requirements of a report of federal adjustment to satisfy TG § 13–1101(c)'s reporting requirement. Such a report must consist of a statement of the amount of the increase and, if the increase is disputed, the reasons why the taxpayer believes that the increase was incorrect. Moreover, it must be filed by the taxpayer.

■ The requirement that the taxpayer file the report of adjustment is further borne out by the legislative history of TG §§ 13–1101(c) and 13–1101(b)(5), both of which were derived in part from Md.Code (1957, Repl.Vol.1984) Art. 81, § 309. That section stated:

If at any time the amount of a taxpayer's federal net taxable income reported on his federal income tax return for any taxable year is increased by the Internal Revenue Service, the taxpayer shall report such increase of federal net taxable income within ninety days after the Internal Revenue Service has made a final determination. In such report the taxpayer shall accept the accuracy of such final determination or shall set forth the grounds upon which he contends that such final determination is erroneous. *If a taxpayer fails to file such a report within the time period prescribed herein, the Comptroller may make an assessment at any time.* If a taxpayer files a timely report, the Comptroller must make an assessment within one year after the receipt of such report.

(Emphasis added). Thus, the predecessor statute to TG §§ 13–1101(b)(5), 13–1101(c), and 13–409 expressly provided that it was the taxpayer who had to file the report of adjustment and that, if he failed to do so, the Comptroller could make assessments against him at any time. Although the wording is somewhat different in the successor provisions, this difference does not indicate a substantive change. The Revisor's Note to TG § 13–1101 states that the "new language [is] derived without substantive change from ... the third and fourth sentences of [former Art. 81, § 309(c) ](3), as those sentences relate[ ] to limitations." We agree with the Comptroller's position that it is the taxpayer who must file a report of adjustment within the prescribed time period, so as to satisfy the reporting requirement of TG § 31–1101(c). If the taxpayer fails to file a report of adjustment within the prescribed time period, the Comptroller may make assessments against that taxpayer at any time.

In this case, it is undisputed that the Browns corresponded with the Comptroller after they received notices informing

them, *inter alia*, that the IRS had reported to the Comptroller the adjustments made to their income. The Browns contend that their correspondence, when combined with the prior reports of the adjustments by the IRS,[4] satisfied TG § 13–1101(c)'s reporting requirement.

With respect to the 1986 and 1987 returns, the correspondence in question took the form of a letter drafted by Mr. Brown, in which he stated:

I believe that the final Federal determination is erroneous. There should have been no changes by the Federal Government for contributions and/or computer leasing for the 1986 tax year, and computer leasing and contributions for the 1987 tax year.

■ Even if we were to accept the Browns' argument that the IRS's notification to the Comptroller of the adjustment, combined with Mr. Brown's letter, could constitute a report within the meaning of TG § 13–1101(c), any such report still was required to have been filed within the prescribed time, *i.e.*, within 90 days after the IRS's final determination of the adjustment to the Browns' income. Mr. Brown's letter was dated November 13, 1992—92 days after the United States Tax Court entered an order, pursuant to the agreement between the parties, concerning the adjustments made to the Browns' 1986 and 1987 income. Therefore, even if this letter, either standing alone or in combination with the Comptroller's notification of the adjustment by the IRS, could have satisfied TG § 13–1101(c)'s reporting requirement, it was not filed within the prescribed time.

---

4. The IRS's notification to the Comptroller, in and of itself, would have been insufficient to satisfy the reporting requirement contained in TG § 13–1101. As stated above, a report sufficient to satisfy that provision's reporting requirement must consist of: (1) a report of the adjustment itself, (2) if the taxpayer challenges the IRS's determination, his basis for doing so, and (3) filed by the taxpayer. Even if we ignore the third requirement of such a report, there is nothing in the record to indicate that the IRS informed the Comptroller of the Browns' challenge to the adjustment and their basis for doing so.

■ Furthermore, Mr. Brown's letter, even when combined with the IRS's report of the adjustments made to the Browns' income, could not satisfy TG § 13–1101(c)'s reporting requirement. Even if we ignore the requirement that such reports are to be filed by the taxpayers, a report of an adjustment still must include the amount of the adjustment and the basis, if any, for any allegation by the taxpayer that the federal adjustment was erroneous. TG § 13–409(b). Presumably, the IRS's report satisfied the former requirement, as it informed the Comptroller about the amount of the adjustment. Yet, the latter requirement was not satisfied by Mr. Brown's letter. Mr. Brown claimed that the federal adjustment was erroneous; he did not, however, provide any basis for that claim.

Our analysis as it pertains to the adjustments made to the Browns' income for 1988 and 1989 is not as straightforward, because the adjustment initially made by the IRS for those years subsequently was reduced. On April 19, 1995, the United States Tax Court issued an order, pursuant to an agreement between the parties, upholding the adjustment to the Browns' income in the reduced amount. Meanwhile, on April 26, 1995, the Comptroller informed the Browns that the IRS had reported to it that their 1988 and 1989 incomes had been adjusted and that, because of these adjustments, the Browns owed an additional $22,474.25 in unpaid taxes and interest.[5]

The Browns responded to this notice by letter dated May 1, 1995, in which they claimed that the Comptroller had erred in its calculations of their tax deficiency. They alleged that the Comptroller had based its calculations on an adjustment that was not final, and that the Comptroller should have determined the amount of additional taxes owed for these years by using as its basis for calculation an amount that the Browns claimed had been paid to the IRS in a compromise settle-

---

**5.** Although it is not entirely clear from the record, this notice appears to have been in reference to the IRS's initial adjustment, which was later amended.

ment.[6]  The letter requested that the Comptroller provide a more detailed accounting of how it arrived at its determination of the Browns' tax deficiency.  On November 13, 1995, the Comptroller sent the Browns its estimate of the amount that they were deficient for 1988 and 1989.  The Browns do not claim to have responded to this notice.

The Browns' May 1, 1995 letter is insufficient to satisfy the reporting requirement contained in TG § 13–1101.  As stated above, to satisfy the reporting requirement, the Browns would have had to inform the Comptroller of the amount of the IRS's final determination of the adjustment to their 1988 and 1989 income and their basis or bases, if any, for alleging error in this determination.  Even if the IRS's report could have satisfied the first prong of the requirement, the Browns' letter failed to satisfy the second prong, because it did not inform the Comptroller why the Browns believed that the IRS's determination was incorrect.  While the Browns challenged the Comptroller's estimate of the 1988 and 1989 deficiencies because they were based on an IRS judgment that was not final, they did not claim that the determination was in error.  Moreover, even if the Browns implicitly made a claim of error, their letter did not provide a basis for the claim.  Thus, the reporting requirement for the adjustments for the Browns' income for 1988 and 1989 was not satisfied.

Even if we were to find that the time limitation contained in TG § 13–1101(c) were applicable, the Comptroller's actions with respect to the adjustments made to the Browns' income did not violate this limitation.  Assuming that the letters written by Mr. Brown to the Comptroller, when combined with the IRS's reports of the adjustments it made to the Browns' income, were sufficient and timely enough to satisfy the reporting requirement contained in TG § 13–1101(C), the

---

**6.**  It is unclear what settlement Mr. Brown is referring to.  Not surprisingly, though, according to Mr. Brown, if the Comptroller had used this amount as the basis from which to calculate additional taxes, the amount that the Browns owed would have been dramatically lower.

Comptroller would have had one year from the date that it received these letters to assess additional taxes.[7] Although the record fails to indicate precisely when the Comptroller received these letters, it does indicate the dates on which they were drafted.[8] Even if we assume that the Comptroller received the letters on the same day that they were drafted, thus beginning the tolling of the one year that the Comptroller had to make any additional assessments, the Comptroller's assessments against the Browns were made within the one-year period.

---

7. TG § 13–1101(c) allows the Comptroller a year upon receipt of the report of the adjustment to make assessments against a taxpayer's adjusted income. According to the Browns, TG § 13–1101(c)'s reporting requirement was satisfied for the adjustments made to their 1986, 1987, 1988 and 1989 incomes, when the Comptroller received the IRS's reports of the adjustments and two letters drafted by Mr. Brown. Both of these letters were written in response to letters from the Comptroller, containing its computations of the Browns' tax deficiencies, which were in turn based on the IRS's reports to the Comptroller about the adjustments made to the Browns' income.

    The first letter that Mr. Brown wrote was drafted on November 11, 1992 and was in response to a letter on a letter containing the Comptroller's computations of the Browns' tax deficiencies for 1986 and 1987. Under the Browns' theory, this letter, when combined with the IRS's prior report, would have completed the report of adjustment required under TG § 13–1101(c). Assuming *arguendo* that the Browns' theory is correct, TG § 13–1101(c)'s reporting requirement would not have been satisfied until the Comptroller received the reports of adjustment for those years, and the Comptroller would only have received the completed reports of for the Browns' 1986 and 1987 incomes when it received Mr. Brown's November 11, 1992 letter. Therefore, the Comptroller would have had a year from its receipt of the November 11, 1992 to make assessments against the Browns' adjusted 1986 and 1987 incomes.

    Similarly, according to this argument, the reporting requirements for the adjustments to the Browns' 1988 and 1989 incomes were satisfied when the Comptroller received the May 1, 1995 letter, which was written in response to the Comptroller's attempts to make assessments against the Browns, after the Comptroller was notified by the IRS of the adjustments made to the Browns' 1988 and 1989 incomes. Therefore, even if the Browns are correct and this letter satisfied TG § 13–1101(c)'s reporting requirement, the Comptroller still would have had a year from the date that it received this letter to make assessments against the Browns' 1988 and 1989 adjusted incomes.

8. The letters themselves are only dated, but the Browns, in their brief, affirm these dates.

The first letter was drafted on November 11, 1992, in response to the adjustments made to the Browns' 1986 and 1987 incomes. With respect to the adjusted incomes for these years, the Comptroller claims to have made its assessments against the Browns on January 13, 1993, less than a year from the date of the drafting of the letter in question. On this date, the Comptroller sent the Browns a notice of assessment for each year in question. Each notice was entitled "Notice of Income Tax Assessment," and itemized the Browns' deficiency in terms of tax due, interest, and penalties. The notices, in their bodies, referred to themselves as being assessments.[9]

As for the adjustments made to the Browns' income for the tax years 1988 and 1989, the Comptroller claims to have made its assessments on November 17, 1995. On this date the Comptroller sent the Browns notices informing them of the assessments against them for these years, and of their right to appeal the assessments.[10] If the assessments against the Browns' adjusted 1988 and 1989 incomes occurred on this date, they would have been made well within a year from the drafting of the Browns' May 1, 1995 letter challenging the adjustments to their taxable incomes for these years.

The Browns counter that the Comptroller did not make an assessment against their adjusted income until the Comptroller arrived at a "final determination" of their tax deficiency pursuant to TG § 13–508. The Comptroller did in fact arrive at such a determination on May 6, 1996, well beyond a year from the drafting of either letter.

The Browns' claim that the Comptroller did not make assessments against their adjusted income for 1986, 1987,

---

**9.** The body of these notices stated that the Browns had "thirty days of the receipt of the notice of this assessment" to make payment or settlement and that if the Browns were "in disagreement with this assessment, an appeal may be taken to the Maryland Tax Court."

**10.** For reasons that are not disclosed, the Comptroller did not maintain copies of these notices. It was able, however, to produce computer records indicating that on November 17, 1995, it sent the Browns notices of the assessments and of their right to appeal.

1988, and 1989 until it reached a "final determination" in accordance with TG § 13–508 is without merit. TG § 13–508 allows a taxpayer to challenge an assessment to the Comptroller, in which case the Comptroller is to render a "final determination" on the assessment. As TG § 13–508(a) allows for such a determination only in response to either "an application for revision of an assessment ... or if the assessment was paid, a claim for refund," it is clear that before the Comptroller can render a "final determination" on an assessment, there must have been an preexisting assessment to have been revised or to have been paid. Therefore, clearly, the Comptroller made its assessments prior to its rendering a "final determination."

■ We agree with the Comptroller's position as to when the assessments were made. Under TG § 13–409, the Comptroller has the power to assess taxes on the basis of adjustments made by the IRS to taxpayers' incomes. An assessment is the Comptroller's official estimate of the amount of a taxpayer's tax liability and/or deficiency. *See Casey Development Corp. v. Montgomery Co.*, 212 Md. 138, 146, 129 A.2d 63 (1957) (observing that "an assessment is an official estimate of sums that are to constitute the basis of apportionment of a tax between the individual subjects of taxation").

In *Western Pocahontas Corp. v. Comptroller*, 1984 WL 2905 (Md.Tax 1984), the Maryland Tax Court, relying upon federal court holdings construing "assessment," as used in the Internal Revenue Code, determined that a letter issued to a taxpayer was an "assessment" under the Maryland tax law. In particular, the court relied upon *C & R Investments, Inc. v. U.S.*, 267 F.Supp. 932 (D.Kan.1967), *remanded on other grounds*, 404 F.2d 314, *on remand*, 310 F.Supp. 222, which held that an "assessment" is "the determination of the amount due as tax upon that which is subject to taxation." The court in *Western Pocahontas Corp. v. Comptroller, supra,* found the letter received by the taxpayer to be an "assessment" because it stated that a deficiency existed and gave the amount of the

deficiency, and the year from which the deficiency arose. *Id.* at 6.

■ The notices that were sent to the Browns on January 13, 1993 and November 17, 1995 contained the same information as did the letter that was ruled an "assessment" in *Western Pocahontas Corp.* We are persuaded, therefore, that the letters were assessments.[11] Thus, even if TG § 13–1101(c)'s limitation were applicable, the assessments were made within the prescribed period. The Browns' reliance on TG § 13–508 is misplaced.

Accordingly, for the aforementioned reasons, we affirm the tax court's judgment.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

---

**11.** The letters in *Western Pocahontas Corp. v. Comptroller, supra,* were slightly more detailed than those sent in the instant case. The letters in *Western Pocahontas Corp.* included a worksheet showing how the Comptroller calculated the taxpayer's deficiency. In the instant case it does not appear that such worksheets were included with the notices. In *Western Pocahontas Corp.,* however, the Comptroller was faced with calculating an assessment in the absence of the taxpayer's financial information, whereas in the instant case the Comptroller presumably, because of the IRS reports, had knowledge of the exact amount of the adjustments.